SAN SABA ENERGY, L.P., R.L. Zinn, Ltd., Gilbert Goldstein, Nanzin and Family Limited Partnership, Appellants,

v.

Marshall H. CRAWFORD, II d/b/a Pursuit Exploration Company, Appellee.

No. 14–03–00980–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 21, 2005.

Rehearing Overruled Aug. 25, 2005.

Michael T. Trefny, Houston, TX, for appellants.

Kimberly R. Phillips, Geoffrey H. Bracken, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This case involves various claims by appellants/plaintiffs San Saba Energy, L.P., R.L. Zinn, Ltd., Gilbert Goldstein, and Nanzin Family Limited Partnership (hereinafter collectively "Interest Owners") against their fellow working interest owner in certain oil and gas leases, appellee/defendant Marshall H. Crawford, II d/b/a Pursuit Exploration Company. After Crawford moved for summary judgment on the Interest Owners' contract and tort claims, the trial court struck most of the Interest Owners' summary-judgment response, sustained all of Crawford's objections to their summary-judgment evidence, and granted Crawford's motion for summary judgment. Concluding that the trial court erred in striking the Interest Owners' summary-judgment response, we consider the response in evaluating the propriety of the summary judgment. Because we conclude the trial court erred in granting summary judgment as to one of San Saba's contract claims against Crawford under the Operating Agreement, we reverse the trial court's summary judgment as to that claim, and we remand it to the trial court for further proceedings consistent with this opinion. We affirm the judgment in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Interest Owners, Crawford, and others were working interest owners in oil and gas leases in Jim Hogg County, Texas. These owners entered into an Operating Agreement dated November 5, 1997 (hereinafter "Operating Agreement"). The Operating Agreement created an area of mutual interest (hereinafter "AMI") and required the parties thereto to immediately give written notice, with all pertinent details and information, to the other par-

ties upon acquiring an oil and gas interest affecting any lands in the AMI or upon acquiring the right to acquire any such interest. Under the Operating Agreement, after such notice is given, each receiving party has either twenty days, exclusive of weekends and legal holidays, or forty-eight hours, exclusive of weekends and legal holidays, to evidence in writing an election to acquire a proportionate interest by paying a proportionate share of the acquisition costs. The twenty-day period applies unless a well is being drilled in the AMI when the notice is given, in which case the forty-eight-hour notice period applies. If a receiving party fails to timely give notice of its election, then it is deemed to have elected not to acquire.

Crawford testified at his deposition that by August 15, 1998, he had a deal worked out for him to buy a term assignment of an oil and gas lease as to a tract of approximately 605 acres of land, part of which was in the AMI. On August 20, 1998, O'Sullivan Oil and Gas Company, Inc. and Crawford executed this Term Assignment (hereinafter "Term Assignment"). On August 24, 1998, Crawford had the Term Assignment recorded in the official records of Jim Hogg County. Crawford testified that on August 25, 1998, he received a report showing that a well had been spudded in the AMI on August 24, 1998. On Wednesday, August 26, 1998, Crawford sent out his notice, attempting to comply with his obligations under the Operating Agreement. Because a well was being drilled in the AMI when the notice was given, the Interest Owners had forty-eight hours to give written notice of their election to acquire a proportionate interest by paying a proportionate share of the acquisition costs. The Interest Owners never gave notice of an election to acquire a proportionate interest.

Irrespective of any election to acquire a proportionate interest in the Term Assignment, it is undisputed that the Operating Agreement, by its own terms, provided that Blacklake, L.L.C., San Saba's predecessor-in-interest, was entitled to share with Crawford an overriding royalty interest in the lands covered by the oil and gas lease that was the subject of the Term Assignment (hereinafter "Lease"). Crawford, however, testified that he conveyed this interest to David and Sandra Doughtie because David Doughtie told Crawford that Blacklake had agreed in a settlement agreement that this overriding royalty interest should be conveyed to him.

The Interest Owners brought suit against Crawford and others. They alleged, among other things, that Crawford breached the Operating Agreement by failing to give them immediate written notice of his right to acquire the Term Assignment and of his acquisition of the Term Assignment and by failing to include in his notice all pertinent details and information. The Interest Owners allege that if Crawford had provided timely notice, then they would have had twenty days to respond. They also assert that if Crawford had provided all pertinent details and information, then they would have used the twenty-day period to investigate the Term Assignment and would have elected to acquire a proportionate interest. The Interest Owners assert that as a result of this alleged breach of the Operating Agreement, they suffered substantial damages. San Saba also asserts that it suffered substantial damages as a result of Crawford's breach of the Operating Agreement by failing to convey to San Saba's predecessor-in-interest an overriding royalty interest in the lands covered by the Lease (hereinafter "Overriding Royalty"). Contrary to Crawford's assertions, San Saba asserts that the settlement agreement in question does not

affect San Saba's entitlement to this Overriding Royalty.

The Interest Owners asserted the following claims, among others, against Crawford:

- Crawford breached his fiduciary and contractual duties relating to a letter agreement of February 12, 1997.
- Crawford breached the Operating Agreement by failing to give immediate and adequate notice to the Interest Owners regarding his right to acquire the Term Assignment and regarding his acquisition of the Term Assignment. Crawford's notice was inadequate under the Operating Agreement because it did not include all pertinent details and information.
- Crawford breached the Operating Agreement by failing to convey to San Saba's predecessor-in-interest, Blacklake, the Overriding Royalty to which Blacklake was entitled under the Operating Agreement.
- Crawford tortiously interfered with San Saba's rights under its settlement agreement with Doughtie and breached his fiduciary duty to hold these interests for San Saba.

The trial court granted Crawford a partial summary judgment, ruling that the Interest Owners take nothing regarding the February 12, 1997 letter agreement because it is invalid. Crawford then filed a single instrument in the trial court entitled "Special Exceptions and Motion for Final Summary Judgment on all Remaining Claims." Despite this title and Crawford's citation to Texas Rule of Civil Procedure 91, entitled, "Special Exceptions," this motion does not point out with particularity any alleged defect or other insufficiency in the allegations in the Interest Owners' petition. Crawford's motion, however, does assert the following summary-judgment grounds:

(1) Crawford asserts various challenges against the Interest Owners' claims based on alleged contractual and fiduciary duties arising from the February 12, 1997 letter agreement.

(2) There is no evidence showing that Crawford owed the Interest Owners a fiduciary duty.

(3) There is no evidence of various essential elements of any claims for tortious interference and conversion asserted by the Interest Owners.

(4) Crawford's August 26, 1998 notice to the Interest Owners was timely as a matter of law under the Operating Agreement, and there is no evidence that this notice was untimely under the Operating Agreement.

(5) There is no evidence of damages to the Interest Owners relating to Crawford's alleged failure to give timely notice under the Operating Agreement.

(6) As a matter of law, Crawford's August 26, 1998 notice contained all pertinent information concerning the Term Assignment.

(7) By failing to respond to a January 27, 1999 letter from Crawford, the Interest Owners waived any interest in the Lease, and Crawford is not obligated to convey any such interest to the Interest Owners.

(8) Crawford did not breach the Operating Agreement by failing to convey the Overriding Royalty to Blacklake because Blacklake previously had assigned this interest to David Doughtie under a December 2, 1997 settlement agreement and because San Saba specifically agreed to this conveyance in an assignment executed on April 13, 1999.

(9) Because Blacklake previously had assigned the Overriding Royalty to

Doughtie, there is no evidence the Interest Owners suffered damages as a result of Crawford's conveyance of this interest to Doughtie.[1]

The Interest Owners timely filed a twenty-four page summary-judgment response in opposition, along with excerpts from three depositions and affidavits from Jonathan Preston and Robert Zinn. Crawford responded by filing objections and a motion to strike some of the Interest Owners' summary-judgment evidence. In this same document, Crawford asked the trial court to strike most of the Interest Owners' summary-judgment response.[2] The trial court sustained all of Crawford's objections to the summary-judgment evidence, struck pages two through twenty-one of the Interest Owners' summary-judgment response, granted Crawford's motion for summary judgment without specifying the grounds, and ordered that the Interest Owners take nothing against Crawford. After the trial court severed the Interest Owners' claims against other defendants and after other claims were nonsuited, the trial court's judgment became final. The Interest Owners appeal, asserting the trial court erred in striking their summary-judgment evidence and most of their summary-judgment response and in granting summary judgment as to their claims for breach of the Operating Agreement and their claim for fraud.

## II. STANDARDS OF REVIEW

In reviewing a traditional motion for summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Dolcefino v. Ran-*

*dolph,* 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

In reviewing a no-evidence motion for summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 206–08 (Tex.2002). We take as true all evidence favorable to the nonmovant, and we make all reasonable inferences therefrom in the nonmovant's favor. *Dolcefino,* 19 S.W.3d at 916. A no-evidence motion for summary judgment must be granted if the party opposing the motion does not respond with competent summary-judgment evidence that raises a genuine issue of material fact. *Id.* at 917. Because the trial court did not specify the grounds for its ruling, we will affirm if any of the grounds advanced in the motion has merit. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## III. ANALYSIS

### A. Did the trial court err in striking most of the Interest Owners' timely-filed summary-judgment response?

As part of their first issue, the Interest Owners assert that the trial court erred in granting Crawford's motion to strike pages two through twenty-one of their twenty-four-page summary-judgment response. Both in the trial court and on appeal,

---

**1.** On appeal, the Interest Owners do not challenge the first three grounds stated above.

**2.** Crawford also filed a motion to exclude the expert testimony of Jonathan Preston. The

trial court, however, did not grant this motion, and the issues raised by it are not before us.

Crawford has asserted that the trial court acted properly in striking substantially all of the Interest Owners' summary-judgment response because this response purportedly did not direct the trial court to any specific evidence on the particular elements of their claims that allegedly raises a fact issue. Crawford asserts that the Interest Owners simply attached voluminous summary-judgment evidence and then summarized it in the response, without indicating how the evidence raises a genuine issue of material fact.

■ Striking a timely-filed summary-judgment response is a severe and unusual remedy. If a trial court could properly strike a nonmovant's timely summary-judgment response, then it would be free to ignore that response in granting summary judgment, and an appellate court reviewing the trial court's summary judgment would not be allowed to consider the response on appeal. Crawford has not cited, and this court has not found, any rule or case law that would allow a trial court to strike a timely summary-judgment response because of some perceived or actual substantive inadequacy. Even if the Interest Owners had failed to respond with summary-judgment evidence raising a fact issue on some of their claims and even if they had attached voluminous evidence without in any way explaining how the evidence raised a fact issue, these failures would be reasons for granting summary judgment or for not reviewing the voluminous evidence; they would not be reasons for striking substantially all of the Interest Owners' summary-judgment response. If a nonmovant's response fails to set forth valid reasons why summary judgment should not be granted and if the motion and summary-judgment evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on the grounds asserted in the motion, then the trial court should simply grant summary judgment. It is improper to go further and also strike the nonmovant's timely-filed summary-judgment response.

■ Crawford did not assert special exceptions alleging that the Interest Owners' summary-judgment response was unclear, ambiguous, or confusing, a procedural solution suggested by four justices on the Texas Supreme Court to complain about deficiencies in summary-judgment responses. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) (plurality op.) (suggesting, in plurality opinion, that a movant who is confused by alleged ambiguity in the nonmovants' response may assert special exceptions against the response); *Toubaniaris v. American Bureau of Shipping*, 916 S.W.2d 21, 24 n. 3 (Tex.App.-Houston [1st Dist.] 1995, no writ) (noting that the part of the *McConnell* opinion discussing special exceptions practice was not a binding opinion of the Texas Supreme Court but rather the opinion of Justices Hightower, Doggett, Gammage, and Spector). Neither the Texas Supreme Court nor this court appears to have addressed this issue in a binding precedent, and we need not decide today the role, if any, of special exceptions against a nonmovant's summary-judgment response. Nonetheless, it is important to note in this case that Crawford's motion to strike was not based on any recognized ground that might support the requested relief. Not only did Crawford's motion to strike fail to assert that the response was unclear, ambiguous, or confusing, but the Interest Owners were not given any opportunity to replead or amend their response—something they should have been given if such special exceptions had been asserted and sustained.

It is possible that, under certain unusual circumstances, a trial court might properly

strike portions of a timely-filed summary-judgment response. *Cf. Herndon v. Campbell,* 86 Tex. 168, 23 S.W. 980, 981 (1893) (holding that, if a pleading contains impertinent or scandalous language, the trial court may expunge or strike the offensive language but should not strike the parts of the pleading that assert valid claims); *Sabine & E.T. Ry. Co. v. Broussard,* 69 Tex. 617, 7 S.W. 374, 377 (1888) (stating that trial court should have sustained an exception to a portion of the petition containing allegations that could have no bearing on the claims between the parties to the suit). However, we have found no authority to support the trial court's striking of substantially all of the Interest Owners' timely-filed summary-judgment response based on its purported inadequacy in briefing the alleged fact issues. Accordingly, we hold the trial court abused its discretion by sustaining Crawford's objections one through four and by striking pages two through twenty-one of the Interest Owners' summary-judgment response. We sustain the first issue to this extent, and on appeal, we shall consider the Interest Owners' entire summary-judgment response.[3]

**B. Did the trial court err in granting a no-evidence summary judgment as to the damages element of the Interest Owners' claim for breach of contract based on Crawford's alleged failure to give timely notice under the Operating Agreement?**

■ In their second issue, the Interest Owners assert the trial court erred in granting summary judgment on Crawford's no-evidence ground challenging the damages element of their contract claim based on Crawford's alleged failure to give timely notice under the Operating Agreement regarding his acquisition or right to acquire the Term Assignment (hereinafter "Term Assignment Claim"). In response to a no-evidence ground for summary judgment, the nonmovants need not marshal their proof; however, their summary-judgment response needs to point out evidence that raises a genuine issue of fact as to the challenged elements. *See Brewer & Pritchard, P.C.,* 73 S.W.3d at 206–08; *Hintz v. Lowe,* Nos. 14–03–00979–CV, 14–03–00983–CV, 2004 WL 2359260, at *2 (Tex.App.-Houston [14th Dist.] Oct. 21, 2004) (mem.op.).

■ The Interest Owners' response in opposition to Crawford's motion for summary judgment addresses only the legal standard for traditional motions for summary judgment. Although the response describes much of the evidence filed in response to Crawford's motion, it does not state that any of this evidence raises a fact issue as to damages regarding the Interest Owners' Term Assignment Claim. The response does not state any method of calculating damages or any amount of losses allegedly resulting from Crawford's alleged breach in the Term Assignment Claim. Indeed, the response does not use the word "damage" or "damages" a single time. The Interest Owners do state that they "have affirmatively established each of the elements of their claims against Crawford with the evidence presented in response to Crawford's motion." They also state that they "have affirmatively established some evidence of each element of all of their claims against [Crawford], thereby precluding summary judgment." The Interest Owners also incorporate by reference into their summary-judgment re-

---

**3.** The Interest Owners also have challenged the trial court's sustaining of Crawford's objections five through fifteen to various pieces of summary-judgment evidence. However, these rulings do not affect our disposition of the issues on appeal, so we do not address the remainder of the first issue, which challenges the trial court's rulings on these objections.

sponse five affidavits and excerpts from three depositions. Their summary-judgment evidence exceeds six hundred fifty pages in length. Normally, it should not take much for a summary-judgment response to point out evidence that raises a genuine issue of fact as to elements challenged by no-evidence grounds. *See Brewer & Pritchard, P.C.,* 73 S.W.3d at 206–08 (acknowledging that case was a close call but holding that response met minimum requirements of Rule 166a(i) and pointed out evidence allegedly raising a fact issue on the challenged elements). In *Brewer & Pritchard, P.C.,* the Texas Supreme Court held that a response with the following characteristics adequately pointed out evidence allegedly raising a fact issue as to the plaintiff's conspiracy claim:

● The response detailed evidence allegedly indicating that one alleged co-conspirator benefitted from the fee agreement of the other alleged co-conspirator, and after identifying this evidence, the response stated that "these facts clearly evidence a … scheme to funnel half of the referral funds through [one alleged co-conspirator] and then, back to [the other alleged co-conspirator]."

● The response stated that the plaintiff's conspiracy claim was based on one alleged co-conspirator's breach of a fiduciary duty owed to the plaintiff, and then the response set forth argument and authorities regarding the alleged fiduciary duty, including a statement that third parties may be liable for aiding and abetting a breach of fiduciary duty. The response then pointed to facts that allegedly showed a breach of fiduciary duty by one of the alleged co-conspirators.

*Id.*

The Interest Owners' response is more deficient as to the damages element of the

Term Assignment Claim than was the plaintiff's response in the *Brewer & Pritchard, P.C.* case. The Interest Owners state generally that the summary-judgment evidence raises fact issues as to all of the elements of all of their claims, and they incorporate by reference more than six hundred fifty pages of evidence. On appeal, the Interest Owners assert that an affidavit from Jonathan Preston raises a fact issue as to the challenged damage element; however, they never made this assertion in their summary-judgment response. We conclude that the response in this case is similar to the one this court found deficient in the *Hintz* case. *See Hintz,* 2004 WL 2359260, at *2–5. If we were to determine that the summary-judgment response in this case were sufficient under Rule 166a(i), then we would be holding that a nonmovant can avoid summary-judgment by filing voluminous and complicated summary-judgment evidence along with a response that states generally that a genuine fact issue has been raised as to each element. In that event, the trial court would have the onerous task of searching the summary-judgment evidence to see if a genuine issue of fact had been raised as to each challenged element. Such a holding would place an unreasonable burden on the trial court and would violate the requirement of Rule 166a(i) that the response must point out evidence that raises a genuine issue of fact as to each challenged element. *See Hintz,* 2004 WL 2359260, at *2–3; *see also U.S. Rentals, Inc. v. Mundy Serv. Corp.,* 901 S.W.2d 789, 793–94 (Tex.App.-Houston [14th Dist.] 1995, writ denied). Therefore, we conclude that the trial court did not err in granting summary judgment as to the Term Assignment Claim because the Interest Owners' response does not point out evidence that allegedly raises a genuine issue of fact as to the damages element of

this claim. Accordingly, we overrule the Interest Owners' second issue.

## C. Is the fourth issue on appeal, relating to the Overriding Royalty claim, moot?

In the fourth issue on appeal, San Saba asserts that the trial court erred in granting summary judgment as to its claim under the Operating Agreement regarding Crawford's failure to convey the Overriding Royalty to Blacklake (hereinafter "Overriding Royalty Claim"). Before we address this issue, we first address Crawford's assertion that this part of the appeal is moot as a result of San Saba's alleged execution of a release with David Doughtie, Sandra Doughtie, and Doughtie Exploration Company (hereinafter the "Doughtie Release") and also as a result of San Saba's alleged execution of an Assignment of Overriding Royalty Interest. San Saba allegedly executed both of these documents in May of 2003, after the trial court granted Crawford's motion for summary judgment. The clerk's record does not contain these documents. Accordingly, we cannot consider these matters unless they deprive this court of jurisdiction.

■ Crawford asserts that San Saba's execution of these documents deprives this court of jurisdiction as to the fourth issue by rendering it moot. Crawford urges that these two documents moot this issue because they operate to fully compensate San Saba for any alleged damages under the Overriding Royalty Claim. Crawford also contends that, by executing these documents, San Saba is estopped by its actions from asserting the Overriding Royalty Claim.

■ Even if we presume for the sake of argument that these documents have the effect alleged by Crawford, we conclude that this would not moot the fourth issue. There is still a live controversy between San Saba and Crawford as to whether the trial court properly granted summary judgment on San Saba's Overriding Royalty Claim, as well as whether San Saba's execution of the Doughtie Release and the Assignment of Overriding Royalty Interest prejudiced this claim. Generally, an appeal is moot when the court's action on the merits cannot affect the rights of the parties. *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex.1993). In the Overriding Royalty Claim, San Saba seeks a money judgment. Even if Crawford's arguments are correct concerning these two documents, on remand the trial court still can grant relief by rendering a take-nothing judgment. If the trial court disagrees with Crawford and finds in favor of San Saba on this claim, it still can render a money judgment in San Saba's favor. The cases cited by Crawford regarding the "one satisfaction rule" do not support the proposition that the Doughtie Release and the Assignment of Overriding Royalty Interest moot the fourth issue under the facts in this case. In the cited cases, the application of the "one satisfaction rule" resulted in a settlement credit which mitigated some or all of the plaintiff's damages against the nonsettling defendant. *See, e.g., Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 590–91 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (applying "one satisfaction rule" to negate all of plaintiff's damages against nonsettling defendant). The application of this rule does not moot any issue in the case. *See, e.g., id.* (reversing judgment and rendering take-nothing judgment based on "one satisfaction rule" rather than dismissing case as moot). Accordingly, we reject Crawford's mootness argument and deny his motion to dismiss.

## D. Did the trial court err in granting summary judgment as to San Saba's claim regarding the Overriding Royalty?

In the fourth issue, San Saba asserts that the trial court erred in granting summary judgment as to its Overriding Royalty Claim. Under the Term Assignment, Crawford acquired an interest in the Lease, which is "a lease interest . . . affecting lands within the AMI" as stated in the Operating Agreement. Therefore, regardless of any election to purchase a proportionate interest, the Operating Agreement required Crawford to convey to Blacklake the Overriding Royalty. Crawford does not dispute this obligation; however, in the trial court and on appeal, Crawford has asserted that he did not have to comply with his obligation under the Operating Agreement to convey the Overriding Royalty to Blacklake because Blacklake agreed in a settlement agreement among other parties to convey this same interest to David Doughtie. At his deposition, Crawford testified that he conveyed this Overriding Royalty to Doughtie because Doughtie asked him to do so. Crawford testified that he relied on representations by Doughtie and Doughtie's counsel that Doughtie was entitled to receive this interest under the settlement agreement signed by Doughtie and Blacklake. Crawford was not a party to this settlement agreement. Crawford did not ask for or receive a copy of this settlement agreement, nor did he make an independent investigation to determine whether Doughtie was entitled to this interest.

We must determine whether Crawford has shown that the December 2, 1997 settlement agreement among Blacklake, Doughtie, and others (hereinafter "Settlement Agreement") negates San Saba's Overriding Royalty Claim as a matter of law. The Settlement Agreement reads in material part as follows:

Blacklake . . . will assign, upon receipt of further interests in the properties described in Exhibit "A" and Schedule 3 attached hereto and incorporated herein by reference, an overriding royalty interested [sic] based upon the sliding scale attached hereto as Exhibit "B," proportionately reduced to the net percentage of the 8/8ths acquired and retained by Blacklake. . . .

. . .

Anything to the contrary notwithstanding, this Agreement shall not be construed as releasing, altering or impeding the rights and obligations of the Parties under the . . . [Operating Agreement]. . . .

The schedules and exhibits attached hereto are used herein to merely reflect the properties and Doughtie's interest therein. It is understood that Blacklake . . . [has] other overriding royalty and working interests not reflected thereon.

In his affidavit attached to Crawford's motion, David Doughtie testified as follows:

In 1999, [Crawford] transferred to me an overriding royalty interest, which [Blacklake] would normally have been entitled to under the terms of the [Joint Operating Agreement] in the amounts set out in the three schedules attached to and made a part of my settlement agreement with [Blacklake] and others. Previously, Blacklake had assigned its interest in that overriding royalty interest to me pursuant to the settlement agreement . . . The overriding royalty interest transferred to me was exactly the amount under the Settlement Agreement, assigned to Doughtie by Blacklake. Rather than having two conveyances, being one from [Crawford] to [Blacklake] and subsequently another to me, it was determined to make the conveyance directly from Crawford to me. [Crawford] did not transfer any other overriding royalty interest in the 605

acre tract to David [sic] or my wife, Sandra Doughtie.

Doughtie's affidavit simply states that Blacklake assigned the Overriding Royalty to Doughtie in the Settlement Agreement, without explaining how the Settlement Agreement covers the Lease. These conclusory statements by Doughtie constitute no evidence that could support the trial court's summary judgment. *See Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). In both his motion in the trial court and his brief on appeal, Crawford merely concludes that the Settlement Agreement constitutes an assignment by Blacklake of the Overriding Royalty to Doughtie. Crawford does not demonstrate how the Settlement Agreement covers the Lease. In the only section that could possibly apply to these facts, the Settlement Agreement states that Doughtie shall receive overriding royalty interests upon Blacklake's "receipt of further interests in the properties described in Exhibit 'A' and Schedule 3 . . . ." The undisputed summary-judgment evidence shows the following:

- Except for referring to various leases on Exhibit "A" of the Settlement Agreement (hereinafter "Exhibit A"), Schedule 3 does not describe any properties.
- The recording information is listed for all of the leases on Exhibit A, and none of that information matches the recording information for the Lease.
- The acreage is listed for all of the leases on Exhibit A, and none of the acreage amounts equals the acreage of the Lease.
- The Lessee listed for all of the leases on Exhibit A is Pursuit Exploration Company. There is no evidence in the record showing that Crawford or Pursuit had any interest in the Lease before August 15, 1998; whereas the Settlement Agreement was effective as of December 2, 1997.
- Only one of the leases on Exhibit A— Lease # TX 100–08—has the same lessor information as the Lease.

At oral argument, Crawford's counsel stated that Crawford bases his argument on the fact that the acreage for Lease # TX 100–08 listed on Exhibit A is part of the acreage covered by the Lease. In his motion for summary judgment and in his appellate brief, Crawford does not cite any summary-judgment evidence that supports this assertion. In his motion to dismiss for mootness filed after oral argument, Crawford asserts for the first time that his affidavit establishes that the approximately 605 acres covered by the Lease includes the 80 acres covered by Lease # TX 100–08 on Exhibit A. The relevant part of Crawford's affidavit states the following:

I have acquired oil and gas leasehold interests covered by the [Operating Agreement] at two times in my lifetime. The first occasion was the interests I had secured prior to October 16, 1997, which are described in a Stipulation of Interest and Cross–Conveyance, which was signed by all of the Plaintiffs in this lawsuit on October 6 and 8, 1997 . . . .

Even if we presume that "covered by the [Operating Agreement]" is the same as "within the AMI," Crawford states that he secured interests in the AMI before October 16, 1997, and that these interests are described in the Stipulation of Interest and Cross–Conveyance (hereinafter "Stipulation of Interest"). The Stipulation of Interest does not describe any interests secured by Crawford; rather, it recites that the present owners of various oil and gas interests, including Crawford, wish to resolve inconsistencies among their interests to achieve the ownership interests reflected in the Stipulation of Interest. Crawford does not state in his affidavit that the approximately 605 acres covered

by the Lease includes the 80 acres covered by Lease # TX 100–08 on Exhibit A of the Settlement Agreement. Crawford does not testify that any of the leases listed on Exhibit A are in the AMI.

After reviewing this traditional-summary-judgment ground, we conclude that Crawford's motion and summary-judgment evidence do not facially establish his right to summary judgment by showing that, as a matter of law, the Settlement Agreement negates liability and damages as to San Saba's Overriding Royalty Claim. *See Dolcefino,* 19 S.W.3d at 916. The Lease is not listed in Exhibit A. The summary-judgment evidence does not prove, as a matter of law, that any of the leases listed on Exhibit A are within the AMI. Crawford's motion and the summary-judgment evidence do not prove as a matter of law that Blacklake's receipt of the Overriding Royalty would have been the receipt of "further interests in the properties described in [Exhibit A]." Furthermore, section 7 of the Settlement Agreement states that, notwithstanding anything to the contrary in the Settlement Agreement, that agreement shall not be construed as releasing, altering, or impeding the rights and obligations of the parties under the Operating Agreement. Crawford's construction of the Settlement Agreement would release, alter, or impede Blacklake's right under the Operating Agreement to receive the Overriding Royalty. Crawford did not prove as a matter of law that the Settlement Agreement relieves him of his contractual obligation under the Operating Agreement to convey the Overriding Royalty to Blacklake. Therefore, the trial court erred in granting summary judgment on Crawford's grounds based on the Settlement Agreement.[4]

■ Crawford also asserts that an Assignment of Overriding Royalty Interest dated April 13, 1999 (hereinafter "Assignment") constitutes a specific agreement by San Saba that Crawford could convey the Overriding Royalty to David Doughtie. Based on the unambiguous language of this document, we conclude otherwise. The only evidence upon which Crawford relies for this argument is the Assignment itself. Crawford claims that the Assignment states that the Overriding Royalty is owned by Doughtie. We find no such statement in the Assignment. In the Assignment, Burlington Resources Oil & Gas Company conveys an overriding royalty interest in and to the lands covered by four different groups of leases, none of which includes the Lease. Crawford has not shown that the overriding royalty conveyed in the Assignment has any connection with the overriding royalty he is required to convey to Blacklake in the Lease. Crawford has not shown that the leases listed in the Assignment cover the same acreage as the Lease, nor has he shown how San Saba's signing of the Assignment and acceptance of these overriding royalty interests constitutes an agreement by San Saba that it was proper for Crawford to have conveyed the Overriding Royalty to Doughtie instead of Blacklake or San Saba. Further, the language of the Assignment does not release or negate San Saba's contract claim under the Operating Agreement regarding Crawford's failure to convey the Overriding Royalty to Blacklake. Therefore, the trial court erred to the extent it granted summary judgment on this claim based on the Assignment.

Crawford also asserts that there is no evidence of damages under San Saba's

---

4. Crawford also argues that handwritten changes to Schedules 1, 2, and 3 of the Settlement Agreement further support his position that the Settlement Agreement covers the Lease. However, this does not follow because these schedules simply apply as to the leases listed in Exhibit A; they do not affect what is described in Exhibit A.

Overriding Royalty Claim because Blacklake previously had assigned the Overriding Royalty to Doughtie. Because this ground is also dependent upon Crawford's arguments under the Settlement Agreement and the Assignment, we conclude that the trial court erred in granting summary judgment on this ground for the same reasons mentioned above. Accordingly, we sustain the fourth issue and reverse and remand as to San Saba's contract claim under the Operating Agreement regarding Crawford's failure to convey the Overriding Royalty to San Saba's predecessor, Blacklake.[5]

### E. Did the trial court err in granting summary judgment as to the Interest Owners' fraud claims?

In their third issue, the Interest Owners argue the trial court erred in granting summary judgment as to their fraud claims. The Interest Owners assert that in their live petition they pleaded fraud claims against Crawford and that Crawford's motion for summary judgment did not address their fraud claims. Crawford asserts that the Interest Owners' live petition did not contain any fraud claim against Crawford. The trial court previously had sustained a special exception and required the Interest Owners to replead without alleging an ostensible claim for conspiracy to breach a contract. The Interest Owners complied. Because our record shows that the trial court sustained no special exceptions as to any fraud claims or as to any alleged failure to plead claims with particularity, we review the Interest Owners' petition liberally in their favor to determine if they pleaded any fraud claims. *See Boyles v. Kerr*, 855 S.W.2d 593, 600-01 (Tex.1993).

In liberally construing the Interest Owners' Eighth Amended Petition, we must find that the petition contains any claims that reasonably may be inferred from the specific language used in the petition, even if the petition fails to state all of the elements of that claim. *Smith-Kline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354-55 (Tex.1995); *Boyles*, 855 S.W.2d at 600-01. Nonetheless, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *See Toles v. Toles*, 113 S.W.3d 899, 911 (Tex.App.-Dallas 2003, no pet.). The petition must give Crawford fair notice of the claims being asserted, and, if we cannot reasonably infer that the petition contains a fraud claim, then we must conclude the petition did not contain this claim, even under our liberal construction. *See SmithKline Beecham Corp.*, 903 S.W.2d at 354-55; *Boyles*, 855 S.W.2d at 600-01. The Eighth Amended Petition does not allege any material misrepresentation by Crawford. The petition alleges that the Interest Owners suffered damages as a result of Crawford's breach of the Operating Agreement by failing to give notice immediately and with all pertinent details and information regarding the Term Assignment. In the midst of lengthy factual allegations, the petition states the following:

> Crawford's offer of the 605 acre lease to the Working Interest Group was a fraudulent and sham transaction designed by Crawford and McCord, and perhaps others, to induce Plaintiffs into not immediately electing to participate in the offering, so that Crawford could retain greater interests in the 605 acre

---

**5.** We note that we have not ruled on the effect of San Saba's alleged execution, in May of 2003, of the Doughtie Release and the Assignment of Overriding Royalty Interest, other than holding that these documents do not moot the fourth issue in this appeal. We do not take any position on the effect, if any, of these documents on the substance of San Saba's Overriding Royalty Claim.

tract and secretly share them with [O'Sullivan Oil and Gas Company], [Scully Oil & Gas Co.] and other members of their Program, or alternatively, which he was secretly obliged to share with them. Crawford and McCord enjoyed a close business and sometimes personal relationship with Chris O'Sullivan and Chris Scully and their actions with respect to the 605 acre lease were part of their plan and scheme to allow O'Sullivan and Scully to benefit from the mineral development in the AMI, and constituted an illegal agreement, or conspiracy between them for the purpose of defrauding Plaintiffs.

The Interest Owners claim that this paragraph is sufficient to plead fraud against Crawford. Although this petition names McCord as a defendant, it does not name O'Sullivan Oil and Gas Company, Scully Oil & Gas Co., O'Sullivan, or Chris Scully as defendants. And though this paragraph does characterize Crawford's August 26, 1998 notice under the Operating Agreement as "a fraudulent and sham transaction," it does not assert that this notice was a material misrepresentation. Later in the petition, the Interest Owners assert that Crawford's notice breached the Operating Agreement, and they seek to recover lost profits allegedly resulting from this alleged breach. In the subsequent "causes of action," section of the petition, the Interest Owners allege breach of contract and various torts, including breach of fiduciary duty, against Crawford. They do not allege any fraud claim against Crawford in this section. In the same section, the Interest Owners assert a fraud claim against McCord. In alleging their entitlement to punitive damages against McCord, the Interest Owners assert that "[McCord's] actions were fraudulent, wilful[,] and malicious." In contrast, in alleging their entitlement to punitive damages against Crawford, the Interest Owners merely state that "Crawford's actions were wilful and malicious," with no mention of fraud. In the context of the allegations in the Eighth Amended Petition, it cannot reasonably be inferred that this petition contains a fraud claim against Crawford, even under a liberal construction. *See SmithKline Beecham Corp.,* 903 S.W.2d at 354–55 (holding that, even under a liberal construction, the pleading did not allege misrepresentation); *Boyles,* 855 S.W.2d at 600–01 (holding that, even under a liberal construction, the pleading did not allege grossly negligent infliction of emotional distress); *Toles,* 113 S.W.3d at 911 (holding that, even under a liberal construction, the pleading did not allege fraud). Accordingly, we overrule the Interest Owners' third issue.

**F. Have the Interest Owners sufficiently briefed their fifth issue relating to alleged error by the trial court in granting summary judgment on "other grounds"?**

In their fifth issue, the Interest Owners assert the trial court erred in granting summary judgment on "other grounds." In their one-paragraph argument under this issue, the Interest Owners state that they believe there are other grounds which would support reversal of the trial court's judgment in addition to those made the subject of their first four issues, and they ask this court to reverse this judgment on any applicable grounds at law or in equity. The Interest Owners cite one case for the proposition that summary judgment is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. The Interest Owners state that their claims are not patently unmeritorious, and that, if this judgment is not reversed for trial, manifest injustice would result to the Interest Owners. The Interest Owners then "pray for equitable relief and a reversal of the [trial court's judgment] in full." The Interest Owners do not cite to any part of the record.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP. P. 38.1(h). We must interpret this requirement reasonably and liberally. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004). Nonetheless, parties asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law supports their contentions. *See* TEX.R.APP. P. 38.1(h); *Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 198–99 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The Interest Owners cite no part of the record and make no specific argument under their fifth issue. They assert only that there are additional grounds to reverse the trial court's judgment and that the entire summary judgment should be reversed to avoid injustice. Even under a liberal construction, this contention is not sufficient to articulate a clear and concise argument as to why we should reverse the trial court's judgment. Further, the Interest Owners have not cited to any part of the record. *See Deutsch*, 97 S.W.3d at 198–99. Because it is inadequately briefed, we overrule the fifth issue.

## IV. CONCLUSION

San Saba's alleged execution of the Doughtie Release and the Assignment of Overriding Royalty Interest does not moot the appellate issue as to whether the trial court erred in granting summary judgment as to San Saba's claim under the Operating Agreement regarding Crawford's failure to convey the Overriding Royalty to Blacklake. The trial court did not err in granting summary judgment as to the Term Assignment Claim because the Interest Owners did not point out in their summary-judgment response any evidence allegedly raising a genuine fact issue as to the challenged element of damages.

The trial court did not err in granting summary judgment as to the Interest Owners' alleged fraud claims against Crawford because, even under a liberal construction, their live pleading did not contain any such claims. The Interest Owners have inadequately briefed their fifth issue in which they assert that the trial court erred in granting summary judgment on "other grounds." The trial court abused its discretion by striking substantially all of the Interest Owners' timely-filed summary-judgment response based upon its determination that the response was substantively inadequate. Because the trial court erred in granting summary judgment as to San Saba's Overriding Royalty Claim, we reverse the trial court's judgment to this extent, and we sever and remand this part of the trial court's judgment for further proceedings consistent with this opinion. We affirm the remainder of the judgment.