Affirmed and Memorandum Opinion filed March 15, 2007








Affirmed and Memorandum Opinion filed March 15, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01101-CV

____________

 

KARIM K. MOJTAHEDI, Appellant

 

V.

 

BHV REALTY, INC., Appellee

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 02-63338

 



 

M E M O R A N D U M  O P I N I O N

This appeal arises out of a landlord/tenant dispute. When
the tenant failed to pay rent, the landlord filed a forcible-entry-and-detainer
action and obtained a judgment and writ of possession.  Upon execution of the
writ of possession, the locks at the leased premised were changed, and a
constable seized the tenant=s personal belongings, which were removed
and taken to a storage facility.  The tenant later sued the landlord alleging
wrongful eviction, conversion, and intentional infliction of emotional
distress.  The trial court granted summary judgment in favor of the landlord. We
affirm. 








I. Factual and Procedural
Background

Appellee BHV Realty, Inc. leased the apartment unit located
at 8050-C Sandspoint, Houston, Texas 77036 (hereinafter the APremises@) to appellant
Karim K. Mojtahedi.  The initial term of the lease was a period of one year,
ending on April 30, 1999, at a rental rate of $605 per month. The lease
agreement (hereinafter the ALease@) included the
following renewal provision: 

4.       AUTOMATIC
RENEWAL AND NOTICE OF TERMINATION: This lease will automatically renew on a
month-to-month basis unless either party provides the other party written
notice of termination at least thirty (30) days before the Termination Date or
the end of any renewal period. 

On May 1, 1999, the parties renewed the Lease for a period
of six months at a rental  rate of $640 per month.  The renewal term of the
Lease ended on October 31, 1999. On December 1, 1999, the parties again renewed
the Lease for a one-year period ending on January 31, 2001, at a rental rate of
$650 per month.  On December 28, 2000, BHV sent a letter to Mojtahedi informing
him of another opportunity to renew the Lease.  BHV attached a copy of a
proposed Lease Amendment and Renewal.  Mojtahedi acknowledged receipt of the
proposed lease renewal but did not execute it or any other lease with BHV to
remain on the Premises after January 31, 2001.[1] 
Mojtahedi paid BHV $650 in February 2001, even though this was not the amount
due in the offer to extend the Lease.[2] 
Mojtahedi did not pay any rent for occupying the property in March of 2001.[3]









After receiving no rent from Mojtahedi for March 2001, and
being unable to find him at the Premises, BHV=s president,
Stanley J. Kuper, went to Mojtahedi=s place of
business, but Kuper discovered that it had closed down.  Between March 1, 2001
and March 16, 2001, Kuper personally made a number of trips to the Premises
attempting to locate Mojtahedi.  However, after repeated unsuccessful attempts
to reach Mojtahedi, on March 16, 2001, BHV filed a forcible-entry-and-detainer
action.[4] 
Mojtahedi failed to answer or appear, and on April 5, 2001, the trial court
rendered a default judgment in favor of BHV. After securing the default
judgment, BHV continued its attempts to contact Mojtahedi but could not locate
him.

The justice court issued a writ of possession on April 16, 2001. 
The next day, a twenty-four hour notice to vacate was placed on the door of the
Premises.  On April 18, 2001, Harris County Deputy Constable D. Cerna executed
the writ of possession.  Kuper met with Deputy Cerna at the Sandspoint location
and allowed him and a representative of Security Storage access to the Premises
for the purpose of removing Mojtahedi=s personal
belongings. On that day, the locks at the Premises were changed in the presence
of Deputy Cerna. Although Mojtahedi was present during part of the time his
property was being removed, he did not attempt to take the property, nor did he
request that the property be left outside the unit for him to retrieve at a
later time. Instead of taking his possessions from the Premises, Mojtahedi left
the Premises prior to the completion of this removal of his property.  He never
returned.  After April 18, 2001, BHV did not have any contact with Mojtahedi
until September 27, 2001, when BHV was served with Mojtahedi=s lawsuit for
wrongful eviction, conversion, and intentional infliction of emotional
distress.  Thereafter, BHV filed a traditional motion for summary judgment,
which the trial court granted. 








II. Analysis 

A.      Did the trial court err in
granting summary judgment in favor of the landlord on the tenant=s claim for wrongful eviction?     

In one issue, Mojtahedi contends the trial court erred in
granting BHV=s motion for summary judgment. In presenting this issue, Mojtahedi
asserts that BHV wrongfully evicted and locked him out in violation of section
92.0081(b)(3) of the Texas Property Code.  We evaluate Mojtahedi=s challenge to the summary judgment
under the familiar standard of review.[5] 

In his live pleadings, Mojtahedi alleged that BHV, acting
through its president (Kuper), locked him out of the Premises on March 10,
2001, without notice, and repeatedly denied his requests to re-enter and
retrieve his personal property.  Mojtahedi contends that BHV violated section
92.0081(b) of the Texas Property Code by allegedly changing the locks on the
doors .  BHV filed a motion for summary judgment, attaching the affidavit of
Kuper, which states, in pertinent part,  

25 . . . BHV REALTY, INC. did not change the locks at 8050-C
Sandspoint, Houston, Texas, 77036, at any time prior to April 18, 2001.  The
Constable=s Office requires, on an eviction,
that the locks be changed in their presence, and the locks at 8050-C Sandspoint
were changed in the presence of Deputy Cerna on April 18, 2001. 

Section  92.0081 of the
Texas Property Code, entitled ARemoval of Property and Exclusion of Residential Tenant,@ provides in pertinent part: 

(b) A landlord may not intentionally prevent a tenant from entering the
leased premises except by judicial process unless the exclusion results
from:

(1) bona fide repairs, construction, or an emergency;

(2) removing the contents of premises abandoned by a tenant; or

(3) changing the door locks of a tenant who is delinquent in paying at
least part of the rent.

. . .








(h) If a landlord violates this section, the tenant may:

(1) either recover possession of the premises or terminate the lease;
and

(2) recover from the landlord a
civil penalty of one month=s rent plus $500, actual damages, court
costs, and reasonable attorney=s fees in an action to recover property
damages, actual expenses, or civil penalties, less any delinquent rent or other
sums for which the tenant is liable to the landlord.

Tex. Prop. Code Ann. ' 92.0081 (Vernon
Supp. 2005) (emphasis added).  BHV=s summary-judgment
proof conclusively established the following: 

(1)     Mojtahedi failed to renew the Lease in
December 2000, causing him become a month-to-month tenant in February 2001; 

(2)     Mojtahedi failed to pay the full amount of
rent due in February 2001; 

(3)     Mojtahedi failed to pay any rent in March
2001; 

(4)     Mojtahedi and BHV did not reach an agreement
that a payment of $275 and the forfeiture of the $400 security deposit would be
acceptable payment for the March 2001 rent; 

(5)     After receiving no rent from Mojtahedi for
March 2001, and being unable to find him at the Premises, BHV=s president (Kuper) went to
Mojtahedi=s place of business, Pizza K,
located at 5907 South Gessner, Houston, Texas, and discovered that Pizza K had
closed down. 

(6)     Between March 1, 2001 and March 16, 2001,
prior to filing a forcible-entry-and-detainer suit, Kuper personally made a number
of trips to the Premises attempting to locate Mojtahedi.  Because Mojtahedi had
been a long-time tenant, initially BHV did not take steps to evict him. 

(7)     After securing a default judgment against
Mojtahedi on April 4, 2001, Kuper continued his attempts to contact Mojtahedi,
without success.

(8)     On April 17, 2001, a twenty-four hour
notice to vacate was placed on the door of 8050-C Sandspoint.  

(9)     On April 18, 2001, the locks at the Premises
were changed when Security Storage removed Mojtahedi=s personal belongings.

(10)    Prior to the day the locks were changed,
Mojtahedi had notice that he was being evicted, and that his property would be
removed.

(11)    Mojtahedi had access to the Premises with
his own key until the day his personal property was removed.








(12)    Mojtahedi was present at least part of the
time his property was being removed from the Premises to be placed in storage
at Security Storage, and yet  Mojtahedi never requested Security Storage to
allow him to load any of the property in his personal vehicle or to leave his
property outside the unit for him to retrieve at a later time. 

(13)    Mojtahedi
could have taken any of his possessions with him but failed to do so.  Instead,
Mojtahedi left the Premises prior to the completion of this move-out and never
returned.

Kuper=s affidavit is
clear, direct, positive, credible and free from contradictions and
inconsistencies. Galvan v. Downey, 933 S.W.2d 316, 319  (Tex. App.CHouston [14 Dist.]
1996, writ denied).  Moreover, through Kuper=s affidavit, BHV
proved as a matter of law that, on April 18, 2001, it used judicial process,
through the execution of the writ of possession, to prevent Mojtahedi from
entering the Premises, and therefore, BHV did not need to satisfy the
requirements of the exception stated in section 92.0081(b)(3).  See Tex. Prop. Code Ann. ' 92.0081(b).  In
this way, BHV negated Mojtahedi=s claim that BHV violated section
92.0081(b)(3).  Thus, the burden shifted to Mojtahedi to produce controverting
evidence raising a genuine issue of fact. See Greene v. Thiet,
846 S.W.2d 26, 29 (Tex. App.CSan Antonio 1992, writ denied). 

In his response to BHV=s motion for
summary judgment, Mojtahedi repeatedly asserted that BHV locked him out of the
Premises on or about March 10, 2001.  However, Mojtahedi did not attach an
affidavit or any other controverting summary-judgment proof to support this
factual assertion.  The only documents Mojtahedi attached to his summary
judgment response were the forcible-entry-and-detainer petition, the motion for
alternate service, the order granting alternate service, the default judgment,
and the return of the writ of possession.  None of these documents support
Mojtahedi=s claim that BHV violated section 92.0081(b)(3).








The uncontroverted proof shows BHV followed all legal
procedures necessary to secure possession of the Premises upon Mojtahedi=s failure to pay
part or all of his rent in February and March 2001.  Mojtahedi had access to
the Premises with his own key until April 18, 2001.  In executing the writ of
possession, Deputy Cerna posted a twenty-four hour notice to vacate the
Premises on the door of the Premises on April 17, 2001. See Tex. Prop. Code Ann. ' 24.0061(d)
(Vernon Supp. 2005).  Mojtahedi was present during the removal of his personal
belongings and has not established (through controverting proof) that he
desired to re-enter the premises or take any of his belongings with him. 
See Jordan v. Geigy Pharm., 848 S.W.2d 176, 180 (Tex. App.CFort Worth 1992,
no writ) (concluding that because appellant failed to meet appellee=s summary-judgment
proof with competent controverty evidence, summary judgment was proper). 
Instead, Mojtahedi left the site and remained out of contact until September
2001.  Mojtahedi admitted in his deposition that he never contacted BHV to
request permission to retrieve his personal property prior to its removal. 
Applying the familiar standard of review for traditional motions for summary
judgment, we conclude that BHV negated one or more of the essential elements of
Mojtahedi=s claim for wrongful eviction under section 92.0081,
and the trial court correctly granted summary judgment on this claim. See
Huffine v. Tomball Hosp. Auth., 979 S.W.2d 795, 801B02 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (finding that affidavit in support of movant=s summary judgment
was clear, positive and direct, otherwise credible and free from contradictions
and inconsistencies, and could have been readily controverted, and absent any
controverting proof, summary judgment was proper);  Murillo v. Valley Coca‑Cola
Bottling Co., 895 S.W.2d 758, 763B64 (Tex. App.CCorpus Christi
1995, no writ) (stating that in order to avoid an adverse summary judgment, a
non‑movant must produce summary judgment evidence controverting the
movant=s summary judgment
proof unless the movant=s summary judgment evidence is legally
insufficient); Spencer v. City of Dallas, 819 S.W.2d 612, 616 (Tex. App.CDallas 1991, no
writ) (concluding that the nonmovant must present summaryBjudgment proof
when necessary to show a fact issue). 

Without providing any legal authority and citing only one
page from BHV=s motion for summary judgment, Mojtahedi also states
the following in his appellate brief:








(1)     BHV falsely stated in its
forcible-entry-and-detainer petition that the address of the Premises was the
only work or home address for Mojtahedi known to BHV.

(2)     The
default judgment in the forcible-entry-and-detainer action was obtained by
fraud and is voidable; therefore, the eviction was wrongful as a matter of
law.  

An appellant=s brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to the record.  See Tex.
R. App. P. 38.1(h).   We must interpret this requirement reasonably and
liberally. Republic Underwriters Ins. Co. v. Mex‑Tex, Inc., 150
S.W.3d 423, 427 (Tex. 2004).  However, parties asserting error on appeal must
put forth some specific argument and analysis showing that the record and the
law support their contentions.  See Tex.
R. App. P. 38.1(h); San Saba Energy, L.P. v. Crawford, 171 S.W.3d
323, 338 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
Other than making these statements, Mojtahedi does not provide any argument or
analysis regarding these alleged errors.  The only authority Mojtahedi cites is
a case that is not on point.[6] 
The only record citation Mojtahedi provides is a cite to one page of BHV=s motion for
summary judgment.  Even under a liberal construction, Mojtahedi=s appellate
briefing on this issue is not sufficient to articulate a clear and concise
argument as to why we should reverse the trial court=s judgment as to
these matters.  Because Mojtahedi has inadequately briefed these two claims, he
has waived review of these complaints.[7] 
See San Saba Energy, L.P., 171 S.W.3d at 338.








B.      Has the tenant adequately
briefed any other alleged error? 

In his summary of the argument, Mojtahedi states that BHV
wrongfully evicted him in violation of section 92.0081(b)(3) of the Texas
Property Code, Aconverting thereby [Mojtahedi=s] personal
property, and enhancing[] existing severe mental anguish.@  This is the only
sentence in his appellate brief that arguably refers to Mojtahedi=s claims for
conversion and intentional infliction of emotional distress.  Mojtahedi asserts
that the trial court erred in granting summary judgment and that under the
applicable standard of review there is a genuine issue of material fact. 
However, he never specifically refers to his claims for conversion and
intentional infliction of emotional distress.  He provides absolutely no citations
to the record, argument, authorities, or analysis regarding these two points. 
Even under a liberal construction, Mojtahedi=s appellate
briefing on this issue is not sufficient to articulate a clear and concise argument
as to why we should reverse the trial court=s judgment as to
these two claims.  Because he has inadequately briefed these two points, he has
waived review as to these two claims.[8] 
See San Saba Energy, L.P., 171 S.W.3d at 338;  Deutsch v. Hoover, Bax
& Slovacek, L.L.P, 97 S.W.3d 179, 198B99 (Tex. App.CHouston [14th
Dist.] 2002, no. pet.). 

III. Conclusion








We find no merit in Mojtahedi=s argument that
the trial court erred in granting summary judgment in favor of BHV as to his
wrongful-eviction claim.  As to his other claims, Mojtahedi has inadequately
briefed any alleged errors.  Accordingly, we overrule Mojtahedi=s sole issue and
affirm the trial court=s judgment. 

 

 

 

_____________________________

Kem Thompson Frost

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed March 15, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.









[1]  The proposed renewal contained the following statement: AIf tenant does not renew this lease
and remains on a month-to-month basis, the rental rate will be an additional
$150.00 per month.@  





[2]  Under this offer to extend the lease, the new rental rate was to have
been $665 per month. 





[3]  Mojtahedi claimed that he made a check out to BHV for $275 to
supplement his $400 security deposit.  He testified that he planned to vacate
the Premises and that he agreed to forfeit his security deposit, paying the
extra $275 to supplement the deposit for the rent due in March 2001.  BHV,
however, never received a check for $275.  Mojtahedi never informed BHV that he
intended to move from the Premises. 





[4]  Deputy Constable Hill attempted but was unable to personally serve
Mojtahedi with citation in the forcible-entry-and-detainer suit.  On March 22,
2001, the trial court entertained a motion for alternate service under Texas
Civil Procedure Rule 742a.  In the support of the motion, Deputy Hill stated
that he attempted personal service on Mojtahedi at 8050-C Sandspoint on March
20, 2001, and again on March 21, 2001. On March 23, 2001, the trial court granted
the motion for alternate service, and service was perfected. Deputy Hill=s return of service states that he
received the citation on March 3, 2001, at 12:10 p.m. and executed it on March
25, 2001 at 9:32 a.m. Aby delivering a copy of the
Petition to Karim K. Mojtahedi at 8050-C Sandspoint, Houston, TX by 742a, Copy
attached to door, Copy mailed 3/28/2001.@ 





[5]   See KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). 





[6]  Mojtahedi cites a case involving a suit between a
father and his son involving claims for fraud and breach of fiduciary duty. 
The case does not involve landlord/tenant issues or any alleged fraud on the
court.





[7]  In any event, we note that the summary-judgment
evidence proves as a matter of law that, before BHV filed its
forcible-entry-and-detainer action, it  discovered that Mojtahedi=s business had closed so that this address was not a
work address known to BHV when it filed its petition in this action.





[8]  Even if there were no briefing waiver, we still
would conclude that the summary-judgment evidence proves as a matter of law
that (1) BHV=s exercise of dominion and control over Mojtahedi=s property was legally authorized by the writ of
possession and was not wrongful and (2) Mojtahedi did not suffer Asevere emotional distress.@  See Campos v. Inv. Mgmt. Prop., Inc., 917 S.W.2d 351, 354 (Tex. App.CSan Antonio 1996, writ denied); Regan v. Lee,
879 S.W.2d 133, 136B37 (Tex. App.CHouston
[14th Dist.] 1994, no writ).