Reversed and Remanded and Majority and Dissenting Opinions filed
February 28, 2006









Reversed and Remanded and Majority
and Dissenting Opinions filed February 28, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00397-CV

____________

 

 

IN THE
INTEREST OF E.A.K.

 

 

________________________________________________

 

On Appeal from the 310th
District Court

Harris County, Texas

Trial Court Cause No.
02-58414

________________________________________________

 

D I S S E N T I N G   O P I N I O N








The trial court did not err in
admitting into evidence a report by a caseworker at Child Protective Services
(hereinafter ACPS@).[1]  Presuming, for the sake of argument, that the
trial court abused its discretion in admitting the other four items as to which
the majority finds error, consideration of the remaining evidence, including
this CPS report, renders any such error harmless.  Because there is legally and factually
sufficient evidence to support the jury=s
verdict, this court should affirm the trial court=s
judgment.  Because it does not, I
respectfully dissent.

Error Analysis

Two days before the jury trial in
this case began, the trial court heard various motions. During this hearing,
appellant Mustofa K. Khandokar=s counsel
referred to written objections that Khandokar had filed to the business records
that CPS planned to introduce into evidence at trial.  In these objections, Khandokar asserted,
among other things, the following objections regarding the case report prepared
by CPS caseworker Jennifer Deible (hereinafter the ADeible
Report@):

[Khandokar] objects to the
introduction of [the Deible Report] to the extent the document contains hearsay
which is not admissible under the Texas Rules of Evidence.  [Khandokar] requests that said document be
introduced only if properly redacted to exclude any hearsay statements.[2]

 

Khandokar=s counsel
told the trial court that Khandokar believed the business records in question
could be admitted into evidence as long as the alleged hearsay was
redacted.  In response, the trial court
deferred ruling on the admissibility of the documents, stating:

I=m going to deny your
objections at this time, but will consider each objection individually during
the presentation of the alleged evidence that may be presented.  So I will consider each objection that you
have as evidence [sic] as it=s permitted. 
I=m not going to admit the
documents now as you have not proved anything up.[3]








During the remainder of this pretrial
hearing, Khandokar made no further objection or reference to the Deible
Report.  Despite this fact, the majority
strains to conclude that Khandokar voiced an objection to the Deible Report
when the trial court heard CPS=s motion
under section 104.006 of the Texas Family Code during the remainder of this
hearing.  The record does not support
this conclusion. 

In a suit affecting the parent‑child relationship, a
statement made by a child twelve years of age or younger that describes alleged
abuse against the child is admissible as evidence if, in a hearing conducted
outside the presence of the jury, the court finds that the time, content, and
circumstances of the statement provide sufficient indications of the statement=s reliability and the court
determines that the use of the statement in lieu of the child=s testimony is necessary to protect
the welfare of the child.  See Tex. Fam. Code ' 104.006 (Vernon 2002).  CPS filed a motion pursuant to section
104.006 seeking court findings under this statute that would allow the
admission into evidence of the following: 

(1)       statements made by nine-year old J.J. to her mother, Stacey
Khandokar, regarding sexual abuse by Mustofa Khandokar,

(2)       Stacey Khandokar=s sworn
statement to the Arlington Police Department,

(3)       Karri LaChance=s sworn statement to the Arlington Police Department
regarding J.J.=s statements to LaChance about sexual abuse,

(4)       statements made by J.J. during a videotaped interview with
caseworker Amanda Dollar,

(5)       an Incident Report created by Detective Rogers of the
Arlington Police Department,

(6)       any disclosures of sexual abuse made by J.J. to the medical staff
at the ABC Center.








 

This section 104.006 motion does not seek the admission into evidence of
the Deible Report, and it makes no mention of that report, directly or
indirectly. Khandokar filed a written response in opposition to CPS=s motion that also makes no mention
of the Deible Report.

At the hearing two days before trial, the trial court heard
CPS=s section 104.006 motion.  During this hearing, Khandokar asserted the
following arguments in opposition to CPS=s motion: 

(1)       section 104.006 of the Texas Family Code is unconstitutional;

(2)       section 104.006 applies only to statements of alleged abuse
made by a child who is the subject of the suit affecting the parent-child
relationship; and

(3)       J.J.=s statements that Khandokar sexually abused her are
not sufficiently reliable.

 








The trial court stated that it was not persuaded by Khandokar=s arguments opposing the motion but
that CPS still had to put on evidence in support of its motion under section
104.006 of the Texas Family Code.  The
trial court stated that it had not yet ruled on the motion because it had heard
no evidence.  The trial court then heard
testimony from Stacey Khandokar. 
Following this testimony, the trial court stated that it was Agoing to admit any outcry statement
made by the child to the caseworker.@ 
The only caseworker mentioned at that hearing was Amanda Dollar, who
took a videotaped statement from J.J.; therefore, the trial court=s statement shows that it intended to
admit into evidence J.J.=s outcry statements to Dollar.[4]  The trial court stated that if Karri LaChance
(a neighbor) was present at trial, it would consider and probably allow her to
testify about J.J.=s outcry statements to LaChance.  The trial court also indicated that anything
J.J. said to her mother, Stacey Khandokar, regarding the alleged abuse would be
admissible.  Although the trial court
gave these indications as to what evidence it intended to admit and under what
conditions it believed it would admit certain evidence, the trial court did not
find that the time, content, and circumstances of any statement made by J.J.
provided sufficient indicia of the statement=s reliability, and the trial court
did not grant CPS=s motion under section 104.006.[5]  

During this hearing, Khandokar voiced no objection to the
admission of the Deible Report, nor did he assert that the statements in the
Deible Report were not sufficiently reliable. 
If the trial court had made the required findings under section 104.006
as to certain statements, then the trial court would have admitted those
statements, regardless of whether they otherwise would have been inadmissible
hearsay.  See Tex. Fam. Code ' 104.006. Khandokar=s opposition to CPS=s motion does not indicate that the
statements referenced in that motion were inadmissible hearsay; rather, this
issue is not relevant to the inquiry under that statute.  See id. Therefore, Khandokar=s actions in opposition to the relief
CPS sought under section 104.006 of the Texas Family Code did not preserve
error as to Khandokar=s argument on appeal that the trial court abused its
discretion in admitting the Deible Report on the ground that it contained
inadmissible hearsay. 








In its motion under section 104.006, CPS did not refer to the
Deible Report or to the description by Deible of J.J.=s statements to Dollar contained
therein.  Khandokar made no such
references either in his written response or at the hearing on this
motion.  The majority indicates that the
failure of CPS and Khandokar to specifically refer to the Deible Report or to
Deible=s description of J.J.=s statements to Dollar is of no
consequence.  However, J.J.=s statements to Dollar could be
contained in the videotape of the interview or in Dollar=s testimony as to these statements or
in a transcript of this interview.  By
referring to J.J.=s statements to Dollar in its motion, CPS did not specify
that it was seeking section 104.006 findings as to Deible=s description of this interview on
one-half of a page in the Deible Report. 
If CPS had sought section 104.006 findings as to this description, the
trial court would have had a duty to examine the time, content, and circumstances
of this description by Deible.  However,
this type of examination does not entail the same inquiry as an examination of
J.J.=s videotaped statements or a
transcript thereof or Dollar=s testimony regarding the same. There is no reason to believe
that the trial court meant to address the admissibility of a portion of one
page of the Deible Report when it mentioned J.J.=s statements to Dollar.








On the first day of trial, a
record custodian from CPS gave business-records testimony as to the documents
in Petitioner=s Exhibit 1, which includes the
Deible Report.  CPS offered this exhibit
into evidence. The trial court heard Khandokar=s
objections to this exhibit, and the trial court admitted Petitioner=s Exhibit
1 into evidence, except for certain psychological evaluations that are not
relevant to this appeal.[6]  The trial court admitted Petitioner=s Exhibit
1 into evidence over the following objections asserted by Khandokar at trial:
(1) some of the business records kept by CPS are incomplete; (2) some of the
documents lack a required signature; (3) the exhibit contains multiple copies
of some documents; (4) some of the documentsCa home
study, written statements of Karri LaChance and Khandokar=s
ex-wife, and a child-abuse protocolCwere not
prepared by CPS.  CPS prepared the Deible
Report.[7]  On its face, this report is complete and does
not have any space where a person would sign. 
No party asserts that the Deible Report is incomplete, lacks a required
signature, or was not prepared by CPS.[8]  Khandokar voiced no objection at trial to the
admission of the Deible Report.  








To the extent the trial court
ruled on Khandokar=s many
written objections at the pretrial conference, that ruling did not preserve
error because it was too preliminary and conditional to constitute a final
ruling on the admissibility of evidence. 
See Norfolk S. Ry. Co. v. Bailey, 92 S.W.3d 577, 583 (Tex. App.CAustin
2002, no pet.).  In any event, even if
Khandokar had obtained a final adverse ruling on his written objections to the
Deible Report, those objections were not sufficient to preserve error.  Khandokar objected to the Deible Report Ato the
extent@ it
contains inadmissible hearsay.  Khandokar
has never asserted that the entire Deible Report is inadmissible; rather, in
his written objection, he requested that any inadmissible hearsay be redacted
prior to the admission of the report. 
Given that CPS prepared this report and proved it up as a business
record, portions of the report are admissible. 
For example, Deible=s
conclusion that there is reason to believe that Khandokar sexually abused J.J.
is admissible evidence.  When a document
contains both admissible and inadmissible evidence, the objecting party should
point out and specifically object to the parts of the document that allegedly
contain inadmissible evidence.  See
Brown & Root, Inc. v. Haddad, 180 S.W.2d 339, 628B29 (Tex.
1944).  A trial court properly overrules
a general objection to a document as a whole when the objecting party does not
specifically point out the portions alleged to be inadmissible hearsay if any part
of that document is admissible.  See
id.  Because part of the Deible
Report was admissible and because Khandokar did not point out which parts he
alleged were inadmissible, the trial court did not abuse its discretion in
admitting the Deible Report as part of Petitioner=s Exhibit
1.  See Speier v. Webster Coll.,
616 S.W.2d 617, 619 (Tex. 1981); Brown & Root, Inc., 180 S.W.2d at
628B29; City
of Houston v. Wisnoski, 460 S.W.2d 488, 490B91 (Tex.
App.CHouston
[14th Dist.] 1970, writ ref=d
n.r.e.); Gen. Motors Corp. v. Harper, 61 S.W.3d 118, 126 (Tex. App.CEastland
2001, pet. denied); see also Roberts v. Petco Animal Supplies, Inc., No.
14-00-01498-CV, 2002 WL 287742, at *4 n.3 (Tex. App.CHouston
[14th Dist.] Feb. 28, 2002, no pet.) (not designated for publication).  Therefore, this court errs in sustaining
Khandokar=s first and second issues,
reversing the trial court=s
judgment, and remanding for a new trial.[9]








Harm
Analysis

The majority correctly states
that error in the admission of evidence is harmless if the same or similar
evidence was properly admitted elsewhere. 
However, because the majority concludes that the trial court abused its
discretion in admitting the Deible Report, it includes this report in the Aerroneously
admitted evidence@ category
in its harm analysis.  The Deible Report
contains the following information:

!         On June 12, 2002 [the day E.A.K. was born], J.J., then nine
years old, moved in with her mother and Khandokar.

!         According to J.J., three weeks later, Khandokar put his hand
on her vagina and moved it while they were in the living room watching
television.  

!         J.J. stated that she had seen Khandokar watching
pornographic movies on a computer.  

!         J.J. also stated that Khandokar had put J.J.=s hand on his penis.

!         J.J. reported that Khandokar put his hand inside her
underpants in the back and that he tried to put his private in her bottom.

!         J.J.=s mother reported that
J.J. told her that Khandokar tried to get J.J. to put her hand on his penis and
that Khandokar had touched J.J.=s vagina.  

!         J.J.=s mother stated that J.J.
first complained of sexual abuse from Khandokar three weeks after J.J. moved in
with them on June 12, 2002.

!         In a face-to-face interview, Khandokar denied J.J.=s allegations.  He stated that J.J. Afollowed him around the
house trying to look at him@ and that J.J.=s mother had asked him to
wear something over his boxer shorts around the house but that he refused.  Khandokar stated that J.J. walked around the
house naked but that he did not care because she was a little girl.  Khandokar stated that J.J. could have touched
his penis accidentally when he was taking E.A.K. from her.  

!         During his interview with the caseworker, Khandokar admitted
he had masturbated while watching pornography but denied that J.J. had ever
seen him watching pornography.  He said
he had watched child pornography, although he denied being aroused by it.  He also said that he had seen pornography
involving animals.  

!         There is reason to believe that
Khandokar sexually abused J.J.








The Deible Report is the main
piece of purportedly Aerroneously
admitted evidence@ upon
which the majority relies to conclude that the alleged error is harmful.  See Majority Op. at pp. 18B21.  However, because the trial court properly
admitted this report, it is actually part of the evidence weighing against
harm.  Unlike the evidence at issue in Richardson
v. Greene, the evidence in the Deible Report is of at least similar, if not
better, quality as the evidence contained in the written statements from Stacey
Khandokar and Karri LaChance, the child-abuse protocol, and the arrest-warrant
affidavit.  See 677 S.W.2d 497,
501 (Tex. 1984).  The evidence contained
in the Deible Report is sufficiently similar to the evidence that the majority
concludes was erroneously admitted and so would render any such error
harmless.  See Schindler Elevator
Corp. v. Anderson, 78 S.W.3d 392, 403 (Tex. App.CHouston
[14th Dist.] 2001, pet. granted, judgmt. vacated w.r.m.) (stating that error is
harmless if the same evidence appears elsewhere in the record).  Even if the majority were correct that
Khandokar preserved error as to the trial court=s
admission of Deible=s
description of J.J.=s
statements to Dollar on one-half of a page of the Deible Report and even if the
trial court abused its discretion in admitting this description, consideration
of the other nine and a half pages of the Deible Report, as to which error was
not preserved, would render any such error harmless.  Therefore, the court errs in sustaining the
second issue as to the Deible Report.

                                                                Conclusion








The
majority erroneously finds error under the second issue as to the trial court=s
admission of the Deible Report. 
Presuming, for the sake of argument, that the trial court abused its
discretion in admitting the written statements from the child=s mother
(Stacey Khandokar) and the neighbor (Karri LaChance), the child-abuse protocol,
and the arrest-warrant affidavit, this error would be rendered harmless by the
trial court=s admission of other portions of
Petitioner=s Exhibit 1, including the Deible
Report.  Therefore, the majority also
errs in sustaining the first issue. 
Khandokar=s
remaining issues challenge the legal and factual sufficiency of the
evidence.  The majority correctly
concludes that legally sufficient evidence supports the jury=s
verdict.  Factually sufficient evidence
also supports the jury=s
verdict.  Therefore, this court should
overrule all of the remaining issues and affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and
Majority and Dissenting Opinions filed February 28, 2006.

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Frost. 
(Hedges, C.J., majority.)

 

 











[1]  Child
Protective Services is a division of the Texas Department of Family and
Protective Services, formerly known as the Texas Department of Protective and
Regulatory Services.  Although the
documents in this record refer to CPS, Texas Department of Protective and
Regulatory Services, and the Texas Department of Family and Protective
Services, for the sake of clarity, this opinion uses only the term ACPS.@





[2]  In his written objections,
Khandokar also objected to the Deible Report to the extent that it contains Aextraneous handwritten
notations.@  Under the same analysis applied in this section,
Khandokar did not preserve error as to this objection.  Khandokar also objected to the introduction
of the Deible Report unless Deible was present to testify as to the
authenticity of the documents.  On
appeal, Khandokar has not asserted that the trial court abused its discretion
in overruling these objections. Furthermore, the majority opinion does not
address these objections. 





[3]  The majority
asserts that, by these words, the trial court indicated it would consider
Khandokar=s objection when the evidence was presented for
admission.  See ante at pp. 15B16 n.21.  The
majority states that CPS presented Deible=s
description of J.J.=s statements to Dollar for admission immediately after
this statement by the trial court when it presented its motion under section
104.006.  This assertion is not supported
by the record.  The trial court indicated
here that it would not admit any documents until after CPS put on
business-records testimony, and no such testimony was presented during the
hearing on the section 104.006 motion. 
As discussed below, in this motion CPS did not seek the admission of
this description, and in any event, the trial court did not grant the motion.





[4]  On appeal,
Khandokar asserts that the trial court=s
reference to a Acaseworker@ is a
reference to Jennifer Deible.  This is
not a reasonable interpretation.  No
reference was made to Deible in CPS=s motion
or in Khandokar=s response.  The
motion and testimony at the hearing indicated that CPS caseworker Dollar took a
videotaped statement from J.J. regarding her sexual-abuse allegations against
Khandokar.  There is no indication in the
record that J.J. ever made any outcry statements to Deible. 





[5]  The majority
concludes that the trial court abused its discretion in finding reliability and
in admitting the Deible Report under section 104.006 of the Texas Family
Code.  Although this statute might
provide one possible basis for admitting the Deible Report, CPS is not required
to satisfy section 104.006 to have the Deible Report admitted into
evidence.  A review of the trial court
record shows that the trial court did not admit the Deible Report into evidence
under section 104.006 of the Texas Family Code. 
Therefore, the trial court could not have erred in so ruling.





[6]  The majority
asserts that the trial court admitted part of Petitioner=s Exhibit 1 (the part of the Deible Report in which
Deible describes J.J.=s statements to Dollar) into evidence two days before
the trial began.  However, on the first
day of trial, CPS offered into evidence this entire exhibit, including the part
the majority claims the trial court already had admitted.  The trial court ruled on this offer and
admitted almost all of this exhibit, including the part that describes J.J.=s statements to Dollar.  Neither the parties nor the trial court
mentioned or implied in any way that any part of Petitioner=s Exhibit 1 already had been admitted into
evidence.  At the hearing two days before
trial, the trial court did not say that it was admitting this part of
Petitioner=s Exhibit 1. 
The actions of the parties and the court confirm that the trial court
did not do so. 





[7]  Khandokar
indicates in his appellate brief that the trial court refused to allow him to
cross-examine the records-custodian witness as to all the parts of Petitioner=s Exhibit 1. 
The record shows otherwise.  The
trial court did not prevent Khandokar from cross-examining this witness or from
voicing whatever objections he might have had to any part of Petitioner=s Exhibit 1. 
Although this exhibit is voluminous, it should be noted that at no time
did Khandokar object that this exhibit was too lengthy, unmanageable, or
cumbersome or that he did not have sufficient time to prepare or present any
objections he had to the many parts of this exhibit.





[8]  Furthermore,
no party asserts that the trial court reversibly erred by admitting multiple
copies of the Deible Report, and this contention would lack merit.





[9]  The majority
also errs in addressing an argument that is not presented in Khandokar=s appellate brief. 
The majority concludes that Khandokar attacks the admission of the
Deible Report in an argument under his second issue.  In presenting this issue, Khandokar asserts
the trial court abused its discretion in admitting hearsay statements by J.J.
without requiring testimony of the individuals to whom the statements were
made.  Although the majority does not
address this argument, the record shows that Khandokar did not voice this
complaint in the trial court before the trial court admitted Petitioner=s Exhibit 1 into evidence.  Therefore, Khandokar did not preserve error
as to this argument.  See Tex. R. App. P. 33.1(a); Bosch v.
Dallas Gen. Life Ins. Co., No. 14-04-00661-CV, 2005 WL 757254, at *6 (Tex.
App.CHouston [14th Dist.] Apr. 5, 2005, no pet.) (mem
op.).  Under his second issue, Khandokar also
argues that the testimony at trial showed that J.J.=s statements were unreliable and should not have been
admitted under section 104.006.  However,
this argument fails because, in reviewing the trial court=s admission of Petitioner=s Exhibit 1, we cannot consider testimony given after
the trial court admitted this exhibit.  See
Methodist Hops. of Dallas v. Tall, 972 S.W.2d 894, 898 (Tex. App.CCorpus Christi 1998, no pet.) (stating that A[i]t is axiomatic that an appellate court reviews
actions of a trial court based on the materials before the trial court at the
time it acted@); Keck v. First City Nat=l Bank of Houston, 731 S.W.2d 699, 700 (Tex. App.CHouston
[14th Dist.] 1987, no writ) (stating that appellate court=s determination of whether trial court erred in making
a ruling is determined based on the trial court record that existed at the time
of the trial court=s ruling). 
Although we must apply the briefing requirements reasonably and
liberally, Khandokar still must put forth some specific argument, along with
analysis showing that the record and the law support that argument.  See San Saba Energy, L.P. v.
Crawford, 171 S.W.3d 323, 338 (Tex. App.CHouston
[14th Dist.] 2005, no pet.).  Even under
a liberal interpretation, Khandokar=s brief
does not contain specific argument and analysis in support of the proposition
that the trial court reversibly erred in admitting into evidence inadmissible
hearsay contained in the Deible Report.  See
id.