**Supplemental Memorandum Opinion filed October 17, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00442-CV

**CARRINGTON MORTGAGE SERVICES, LLC AND DEUTSCHE BANK TRUST COMPANY, AS INDENTURE TRUSTEE FOR NEW CENTURY HOME EQUITY LOAN TRUST 2005-2, Appellants**

**V.**

**LARRY HUTTO AND BONNIE HUTTO, Appellees**

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-08693**

## S U P P L E M E N T A L   M E M O R A N D U M   O P I N I O N

We have issued a memorandum opinion affirming the trial court's judgment that Carrington Mortgage Services, LLC and Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan Trust 2005-2 (collectively the "Bank Parties") take nothing on their claims against appellees Larry Hutto and Bonnie Hutto. We issue this supplemental memorandum opinion

to provide further explanation.

## A.     The Bank Parties' failure to brief challenges to all possible bases for the trial court's conclusion that they cannot foreclose a lien on the Huttos' homestead

### *The Bank Parties' Second and Third Issues*

In the second issue in their opening brief, the Bank Parties asserted that the trial court erred when it ruled that the Huttos were not in default and when it ruled that the Bank Parties could not foreclose because they did not prove the amount of the delinquency, or arrearage, on the note.[1]   Under this issue, the Bank Parties stated that the trial court erred in concluding that the Bank Parties failed to prove that the Huttos were in default on May 7, 2012, because of testimony in the Huttos' case-in-chief showing that the Huttos stopped paying after they made the March 2012 payment.  The Bank Parties also asserted the trial court erred in ruling that they could not foreclose because the amount stated in the May 7, 2012 letter is inaccurate.  The Bank Parties argued that a power of sale can be exercised if any part of the debt is due and owing and that, even if the amount claimed to be owed is incorrect, the borrower still has the duty to tender payment of the part of the debt that is due and owing to stop a foreclosure.  In their third issue in the opening brief, the Bank Parties asserted that the trial court erred when it ruled that the lender's violation of Texas Constitution article XVI, section 50(a)(6) precluded the Bank Parties from being equitably subrogated to liens allegedly discharged at the closing of the home-equity loan.

---

[1] In their first issue in the opening brief, the Bank Parties claimed that the trial court erred in ruling that the Bank Parties were not entitled to foreclose on the homestead because the lien became valid several years before the Huttos provided notice of the alleged constitutional violations or filed this suit.  As explained in our prior opinion, this issue lacks merit under *Wood v. HSBC USA, N.A.*, 505 S.W.3d 542, 547–51 (Tex. 2016).  *See Carrington Mortgage Servs. v. Hutto*, No. 14-15-00442-CV, 2017 WL 592120, at \*3–4 (Tex. App.—Houston [14th Dist.] Feb. 14, 2017, no pet. h.) (mem. op.).

2

## *The Bank Parties' Foreclosure Theories*

The Bank Parties sought an order from the trial court authorizing them to proceed with the foreclosure of a home-equity lien on the Huttos' homestead property under the power-of-sale provision of the "Texas Home Equity Security Instrument" ("Security Agreement") the Huttos signed.[2]   In the alternative, the Bank Parties asserted that under the doctrine of equitable subrogation, they were entitled to assert the lien rights of a prior lienholder and of government agencies whom the Huttos allegedly paid using some of the home-equity-loan proceeds. Under a provision in the Security Agreement, the Huttos agreed that the lender "shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment."

Under the doctrine of equitable subrogation, to be entitled to foreclose a lien that the Huttos discharged using the proceeds of the home-equity loan, the Bank Parties had to prove that the Huttos used the proceeds of the home-equity loan to discharge a valid lien.  *See LaSalle Bank Nat'l Ass. v. White*, 246 S.W.3d 616, 619–20 (Tex. 2007).  One of the requirements for the lien to be valid is that the lien must fall within one of the exceptions to the protection of the homestead against forced sale listed in article XVI, section 50(a) of the Texas Constitution.  *See* Tex. Const. art. XVI, §50(a); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex. 1996).  If the Bank Parties were allowed to foreclose such a discharged lien against the Huttos' homestead under the doctrine of equitable subrogation, they would be able to foreclose under the Security Agreement's power-of sale-provision, even if

---

[2] In their live pleading, the Bank Parties also sought (1) declaratory relief, (2) a money judgment against the Huttos, and (3) a judgment lien.  On appeal, the Bank Parties have not assigned error or briefed any challenge to the trial court's denial of this relief.

the Bank Parties are not able to enforce the home-equity lien against the Huttos' homestead. *See Benchmark Bank*, 919 S.W.2d at 662.

### The Trial Court's Reasons for Denying Foreclosure

In its findings of fact and conclusions of law, the trial court stated that the Bank Parties, as claimants seeking to foreclose under the Security Agreement's power-of-sale provision, had the burden to establish that (1) they have a valid lien upon which to foreclose; (2) they have performed all of their obligations under the Security Agreement; and (3) the Huttos had an uncured default. The trial court determined that the Bank Parties had not met this burden and that they had not shown that they have a valid lien upon which to foreclose.[3] If the Bank Parties were entitled to foreclose based on the equitable-subrogation doctrine, they would be able to foreclose under the power-of-sale provision of the Security Agreement. *See id*. We conclude that the trial court's determinations apply to the Bank Parties' request for a foreclosure order based on the equitable-subrogation doctrine as well as to the Bank Parties' request for a foreclosure order based on the home-equity lien.

Later in the findings of fact and conclusions of law, the trial court stated that

---

[3] The Bank Parties asserted in the statement-of-facts section of their opening brief that the trial court concluded that appellant Deutsche Bank did not prove it has a valid lien. The Bank Parties also asserted in this section that the trial court ruled in its subsequent judgment that they are not entitled to foreclose because they have not met their burden to show that they have a valid lien on which to foreclose. In its findings of fact and conclusions of law, after describing the burden of proof for "Carrington and Deutsche," the trial court stated that "[t]he *Bank* has not met *its* burden to show that *they* have a valid lien to foreclose on, and have not met *their* burden." (emphasis added). The "Bank" is not a defined term in the findings of fact and conclusions of law. In the final judgment the trial court signed after issuing its findings of fact and conclusions of law, the trial court stated that both of the Bank Parties had not met this burden and that the Bank Parties had not shown that they are entitled to an order for foreclosure. We conclude the trial court found that both of the Bank Parties did not carry their burden to show that they have a valid lien on which to foreclose.

4

it denied the Bank Parties' equitable-subrogation claim. The trial court declined to follow the Bank Parties' "theory [that they] may violate the Texas Constitution or fail to comply with [the] loa[n] documents and yet escape a borrower's remedies because [they] stepped into the shoes of a prior lender who followed the law." To the extent it might appear that the trial court denied the equitable-subrogation claim based only upon this reason, the trial court dispelled this notion in its final judgment by stating that the findings of fact and conclusions of law contained multiple reasons for denying the Bank Parties' equitable-subrogation claim.[4]

The trial court determined that, under the facts presented at trial, the Bank Parties were not entitled to foreclose a lien on the Huttos' homestead for the following reasons:

(1) the opportunity to cure given to the Huttos was not in accordance with the Bank Parties' duties under the note and Security Agreement;

(2) the Bank Parties failed to give the Huttos a proper and accurate notice to cure;

(3) the notice of default contained an erroneous cure amount, making the Huttos' opportunity to cure impossible;

(4) the Bank Parties did not strictly comply with their contractual duties before foreclosing;

(5) the Bank Parties did not carry their burden to show that they have a valid lien on which to foreclose; and

(6) the Bank Parties are not entitled to equitable subrogation because they violated the Texas Constitution or failed to comply with the loan documents.

### *The Bank Parties' Failure to Challenge Each Independent Basis for the Trial Court's Judgment*

To obtain reversal, an appellant must challenge every basis on which the

---

[4] In the final judgment, the trial court stated that "[f]or the *reasons* stated in the Court's Findings of Fact and Conclusions of Law, [the Bank Parties'] claim for equitable subrogation is also **DENIED**" (italics added).

trial court's judgment could be sustained. *See Midway Nat'l Bank of Grand Prairie, Tex. v. W. Tex. Wholesale Supply Co.*, 453 S.W.2d 460, 460–61 (Tex. 1970) (per curiam); *Powell v. Reiswerg*, No. 14–12–00776–CV, 2013 WL 5883807, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) (mem. op.). On appeal the Bank Parties conclusorily stated in their brief that the trial court's findings are not supported by legally or factually sufficient evidence. Even construing the Bank Parties' appellate brief liberally, we cannot conclude that they adequately briefed challenges to each independent basis for the trial court's ruling that they were not entitled to an order authorizing them to foreclose a lien on the Huttos' homestead. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.). As to the Bank Parties' request for authorization to foreclose the home-equity lien, the Bank Parties did not adequately brief any challenge to the trial court's determination that the Bank Parties were not entitled to foreclose because they did not strictly comply with their contractual duties before foreclosing. *See id*. As to the Bank Parties' request for authorization to foreclose the prior, allegedly discharged liens under the doctrine of equitable subrogation, the Bank Parties did not adequately brief any challenge to the trial court's determination that the Bank Parties did not show that they have a valid lien on which to foreclose.[5] *See id*.

B. **Legal and factual sufficiency of the evidence to support the trial court's finding that the Bank Parties did not to show that they have a valid lien on which to foreclose**

In any event, even if the Bank Parties had briefed challenges to each independent basis for the trial court's ruling that they were not entitled to an order

---

[5] The Bank Parties asserted in the statement-of-facts section of their opening brief that the trial court ruled they are not entitled to foreclose because they did not meet their burden to show that they have a valid lien on which to foreclose.

authorizing them to foreclose a lien on the Huttos' homestead, we still would affirm the trial court's judgment. On appeal, the Bank Parties asserted only one challenge to the trial court's finding that the Bank Parties did not show that the home-equity lien was valid — their argument under their first issue that after the four-year statute of limitations expired the home-equity lien changed from a voidable lien to a valid lien. As explained in our prior opinion, this argument lacks merit under *Wood v. HSBC USA, N.A.*, 505 S.W.3d 542, 547–51 (Tex. 2016). *See Carrington Mortgage Servs. v. Hutto*, No. 14-15-00442-CV, 2017 WL 592120, at *3–4 (Tex. App.—Houston [14th Dist.] Feb. 14, 2017, no pet. h.) (mem. op.).

As to the Bank Parties' request for authorization to foreclose the prior, allegedly discharged liens under the doctrine of equitable subrogation, the Bank Parties assert on appeal that the Huttos used most of the proceeds of the home-equity loan to discharge a prior mortgage and taxes owed to a county and to a school district. The Bank Parties offered documentary evidence at trial; they did not call any witnesses to testify. The only trial evidence that arguably addresses the validity of the alleged prior liens is Exhibit A-12, which is the settlement statement from the closing of the home-equity loan. According to that statement, the Huttos used $88,174.97 of the loan proceeds for a "Payoff to New Century Mortgage." Presuming that the Huttos paid off an obligation to New Century Mortgage, the settlement statement does not state that this obligation was secured by a lien on the Huttos' homestead. The trial evidence does not contain a copy of any note, security agreement, or deed of trust involved in this pre-existing indebtedness, nor is there any proof that would show whether this indebtedness falls within one of the exceptions to the protection of the homestead against forced sale listed in article XVI, section 50(a) of the Texas Constitution. *See* Tex. Const. art. XVI, §50(a); *Benchmark Bank*, 919 S.W.2d at 660. According to the

7

statement, the Huttos used some of the proceeds to pay "HARRIS COUNTY for taxes 2003/2004/ESD 47," "FRY ROAD MUD (Bob Leared) for taxes 2004," and "Katy ISD/ Waller Co Appraisal Dist for taxes 2003-2004." There is no statement that the Huttos owed these taxes on their homestead. The trial record contains no evidence from taxing authorities showing that the Huttos actually owed these amounts of taxes at the time of the home-equity-loan closing, nor does any trial evidence show that any such taxes were owed on the Huttos' homestead or secured by a lien enforceable against their homestead.[6] The trial evidence is legally and factually sufficient to support the trial court's finding that the Bank Parties did not carry their burden to show that they have a valid lien on which to foreclose.[7] *See White Oak Operating Co. v. BLR Const. Cos.*, 362 S.W.3d 725, 737-38 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (concluding that trial evidence was legally and factually sufficient to support the jury's failure to find that a party committed fraud); *Primis Corp. v. Milledge*, No. 14-08-00753-CV, 2010 WL 2103936, at *2–3 (Tex. App.—Houston [14th Dist.] May 27, 2010, no pet.) (concluding, in a memorandum opinion, that the trial evidence was legally sufficient to support the trial court's finding that the defendant's negligence was not the cause of any of the plaintiff's damages).

## C.    Conclusion

The Bank Parties did not adequately brief challenges to each independent

---

[6] The record does not contain any stipulation or judicial admission by the Huttos that any pre-existing liens were valid or enforceable against the Huttos' homestead.

[7] In the alternative, even if the trial court had not determined that the Bank Parties did not show they have a valid lien on which to foreclose under their equitable-subrogation claim and even if the trial court erred in concluding that equitable subrogation was not available because the Bank Parties violated the Texas Constitution or failed to comply with the loan documents, this court still would affirm because the trial court rendered the proper judgment under a legal theory supported by the evidence. *See TEPCO, LLC v. Reef Exploration, L.P.*, 485 S.W.3d 557, 565–67 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

basis for the trial court's ruling that they were not entitled to an order authorizing them to foreclose a lien on the Huttos' homestead. Even if they had, we still would affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.