**Affirmed and Opinion filed November 16, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00181-CV

---

### RYAN CONSTRUCTION SERVICES, LLC AND BUILDERS BLUEPRINT, LLC, Appellants

### V.

### ROBERT HALF INTERNATIONAL, INC., Appellee

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-14437A**

---

## O P I N I O N

When two companies discovered that a common employee allegedly had stolen money, they brought suit against the employee-placement firm, alleging negligence and Deceptive Trade Practices Act violations in connection with the firm's employee-background check. The trial court granted summary judgment in favor of the employee-placement firm. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Accountemps, a division of appellee/defendant Robert Half International, Inc. specializes in placing accounting professionals with companies to work on a temporary-to-permanent basis. Judd Ryan, owner of appellant/plaintiff Ryan Construction Services, LLC and appellant/plaintiff Builders Blueprint, LLC contacted Robert Half International and asked for help finding an accounting professional to employ. Robert Half International representatives met with Ryan to discuss the company's services. Ryan stated that those representatives told him, "We check our people out. You are getting the best when you work with Accountemps." According to Ryan, the representatives showed him a form authorizing Robert Half International to perform background checks on candidates for potential employment.

### *The Parties' Agreement*

Robert Half International recommended that Ryan Construction Services, LLC hire Angela Eubanks. Ryan signed an agreement with Robert Half International on behalf of Ryan Construction Services. On the date Robert Half International contracted with Ryan Construction Services to place Eubanks, Robert Half International sent a letter to Ryan Construction Services confirming Eubanks's placement under its "General Conditions of Assignment and Terms of Payment." Judd Ryan and Barbie Brown, on behalf of Ryan Construction Services, signed various time sheets acknowledging receipt and acceptance of the "General Conditions of Assignment and Terms of Payment." The General Conditions of Assignment included a section detailing the "Scope of Background Inquiries." This section describes the way Robert Half International checks references and also states: "We have not screened for drug use, administered a medical exam, conducted a criminal background check, or engaged in any

2

verification process other than [the reference checks described above]."

*Temporary Placement to Permanent Placement*

Shortly after Eubanks began working at Ryan Construction Services, Ryan asked her if she also would work for another one of his companies, Builders Blueprint, LLC. Ryan did not disclose this employment to Robert Half International. A few months later, Ryan Construction Services informed Robert Half International that it wanted to convert Eubanks, who had been working as a temporary employee, to a permanent employee. Robert Half International sent Ryan Construction Services a letter confirming the end of Eubanks's temporary employment through Robert Half International and her conversion into a permanent employee of Ryan Construction Services. The letter stated that "Accountemps checks selected references on our candidates . . . and [t]o assist you in determining whether or not you should conduct any additional pre-employment background checks, we are enclosing a complimentary copy of *What You Should Know About Background Checks*." Ryan acknowledged he received the letter and enclosure.

Robert Half International conducted a seven-year criminal history background check on Eubanks before she became a permanent employee of Ryan Constructions Services. That background check did not reveal any criminal history for Eurbanks. Robert Half International did not share the results of the criminal background check with Ryan Construction Services.

*Alleged Embezzlement by Placed Employee*

Ryan Construction Services and Builders Blueprint, LLC, (collectively, the "Ryan Parties") allege that at some point after Eubanks became a permanent employee, she embezzled approximately $160,000. When Ryan discovered

Eubanks had a criminal history, Ryan called Robert Half International to confront the company about recommending an employee with a criminal history and to report that the employee had stolen money from Ryan Construction Services. The Robert Half International representative told Ryan that Robert Half International had conducted a criminal background check that did not reveal any criminal history in the seven years preceding the check. The history the Ryan Parties had uncovered — Eubanks's conviction for securing execution of a document by deception — occurred thirteen years before the criminal background check.

*Plaintiffs' Claims*

The Ryan Parties filed suit against Robert Half International, its bank, and Eubanks. In their live pleading, the Ryan Parties alleged that Robert Half International (1) engaged in negligent or grossly negligent conduct in failing to inform them that Eubanks had a criminal conviction and (2) violated the Texas Deceptive Trade Practices Act (DTPA) by engaging in a false, misleading and deceptive course of conduct that led the Ryan Parties to believe Robert Half International had run a background check on Eubanks and that she had no criminal history, representing that Robert Half International's agreement had the benefit of a background check, failing to disclose that Robert Half International's background check included only the seven years before employment, failing to disclose that Eubanks had a criminal history, and acting unconscionably.

*Summary Judgment*

Robert Half International filed a lengthy summary-judgment motion that contained both traditional and no-evidence grounds. The Ryan Parties responded. The trial court granted Robert Half International's summary-judgment motion. Robert Half International then moved to sever the Ryan Parties' claims against Robert Half International from the claims the Ryan Parties asserted against the

4

Ryan Parties' bank and Eubanks. The trial court granted the motion to sever the claims. Although the severance order contains language in which the trial court stated that the order would not be final until the parties submitted a new proposed judgment in the severed case, because the order granted severance and the trial court already had signed an order granting summary judgment on the claims in the severed case, the trial court's severance order finally resolved all claims among all parties in the severed case.

*Appeal*

The Ryan Parties now appeal the trial court's granting of summary judgment in favor of Robert Half International. They challenge the merits of the summary judgment as well as the trial court's evidentiary rulings on the summary-judgment proof.

## STANDARD OF REVIEW

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if

5

reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Because the trial court did not specify a basis for its ruling on the summary-judgment motion, to prevail on appeal, the Ryan Parties must show that each of the independent grounds asserted in the summary-judgment motion is insufficient to support the trial court's ruling. *See Comm'n Mgmt., LLC v. Cutten Dev., L.P.*, No. 14-14-00854-CV, 2016 WL 3554704, at *3 (Tex. App.— Houston [14th Dist.] Jun. 28, 2016, pet. denied) (mem. op.).

## ANALYSIS

The Ryan Parties raise four issues on appeal. Under the first three issues, they challenge the summary judgment.[1] In their fourth issue, the Ryan Parties assert the trial court erred in sustaining hearsay objections to two summary-judgment exhibits. We presume for the sake of argument that the trial court erred in excluding the summary-judgment exhibits and we consider them for the purposes of our analysis.

### A. Negligence Claims

In their live pleading, the Ryan Parties asserted negligence claims based on Robert Half International's (1) failing to conduct a criminal background check on Eubanks, (2) conducting a criminal background check on Eubanks that only went back seven years, (3) failing to inform the Ryan Parties that Eubanks had a

---

[1] In their appellate brief, the Ryan Parties assert that only Ryan Construction Services is challenging the trial court's granting of summary judgment on the Ryan Parties' DTPA claims.

criminal conviction, and (4) failing to inform the Ryan Parties that its criminal background check on Eubanks went back only seven years.

In its no-evidence summary-judgment motion, Robert Half International asserted as a summary-judgment ground that the Ryan Parties had no evidence Robert Half International had a legal duty to conduct any criminal background check on Eubanks. On appeal, Robert Half International did not brief any arguments attacking the trial court's granting of summary judgment based on its claims that Robert Half International (1) negligently failed to inform the Ryan Parties that Eubanks had a criminal conviction and (2) negligently failed to inform the Ryan Parties that its criminal background check on Eubanks went back only seven years. To the extent the Ryan Parties seek to attack the summary judgment as to those two claims, the Ryan Parties have waived that argument due to inadequate briefing. *See* Tex. R. App. P. 38.1; *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### *Duty*

To establish negligence, a party must show a duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). Whether a duty exists is a threshold inquiry. *Id.* A party who has no duty cannot be liable for negligence. *Id.* The existence of a duty is a question of law determined based on the facts surrounding the occurrence. *Pagayon v. Exxon Mobil Corp.*, 2017 WL 2705530, at *3 (Tex. Jun. 23, 2017). When a duty has not been recognized in particular circumstances, the question is whether one should be recognized. *Id.* In determining whether to impose a duty of care, courts consider related social, economic, and political questions and their application to the facts. *Id.* Courts weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden

of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.* Courts also consider whether one party generally would have superior knowledge of the risk or a right to control the actor who caused the harm. *Id.* Some of these factors may turn on facts that cannot be determined as a matter of law and instead must be resolved by the factfinder, but such cases are unusual. *Id.* Courts must evaluate the factual scenario in the context of similarly situated actors because the question is whether the law should impose a duty on a particular class of actors. *Id.*

In their summary-judgment response and on appeal, the Ryan Parties argue that (1) Robert Half International represented that it had run a background check on its candidates, (2) if Robert Half International had run a background check, that check would have revealed Eubanks's criminal history, and (3) even if Robert Half International had no duty to run a criminal background check, once the placement firm "undertook to run a criminal background check, then it had a duty to do it in a non-negligent manner."

The Ryan Parties do not assert that Texas recognizes a negligence duty in this scenario or that courts should impose a negligence duty in this context. The Ryan Parties' statements that Robert Half International represented it had run a background check and the Ryan Parties' arguments that the background check would have revealed criminal history do not address whether Texas courts have imposed or should impose a negligence duty in this context. The only other argument the Ryan Parties have raised in response to Robert Half International's summary-judgment ground is that once the placement firm undertook to run a criminal background check, then it had a duty to do it in a non-negligent manner. Thus, on appeal the Ryan Parties cannot seek to reverse the trial court's summary judgment based on any other argument that Robert Half International had a duty of

8

care.  *See Lopez v. Exxon Mobil Development Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at \*13 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, no pet. h.).

*Assumption-of-Duty Argument*

The Ryan Parties argue that once Robert Half International undertook to run a criminal background check, it had a duty to do it in a non-negligent manner.  A duty to use reasonable care may arise when one undertakes to provide services to another, either gratuitously or for compensation.  *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000).   Except for a single conclusory statement, the Ryan Parties did not brief that Robert Half International had a duty based on its voluntary actions.  The sole case the Ryan Parties cite, *Otis Engineering Corp. v. Clark*, is not on point and the Ryan Parties do not explain how the case supports their position.  *See* 668 S.W.2d 307, 309 (Tex. 1984).  Nor do the Ryan Parties address how Robert Half International's undertaking created a duty.  The Ryan Parties have waived this point by failing to provide adequate briefing.  *See* Tex. R. App. P. 38.1; *San Saba Energy, L.P.*, 171 S.W.3d at 337.

Even if the Ryan Parties had briefed this issue sufficiently, and even if we were to conclude Robert Half International voluntarily assumed a duty, the duty would be limited to the scope of Robert Half International's undertaking.  *See Holman v. KRJ Mgmt., Inc.*, No. 14-03-00017-CV, 2004 WL 502934, at \*4 (Tex. App.—Houston [14th Dist.] Mar. 16, 2004, no pet.) (mem. op.).   The summary-judgment evidence showed that, at most, Robert Half International's undertaking was to conduct a limited criminal background check.  The summary-judgment record contains no evidence that Robert Half International assumed a duty to conduct a background check that went beyond the limited background check it

conducted for its own purposes.[2] *See id.*

Because we conclude the Ryan Parties' arguments attacking Robert Half International's summary-judgment ground that the Ryan Parties had no evidence Robert Half International had a duty to conduct any criminal background check lack merit, we overrule the Ryan Parties' challenge to the trial court's summary judgment on the negligence claims.

## B. Deceptive Trade Practices Act Claims

The Ryan Parties assert Robert Half International violated the DTPA because Robert Half International:

- engaged in misleading and deceptive conduct that led the Ryan Parties to believe Robert Half International had run a background check on Eubanks and she had no criminal history;
- represented that Robert Half International's service had the benefit of a background check;
- failed to disclose that Robert Half International's background check looked at only the seven-year period preceding the check;
- failed to disclose that Eubanks had a criminal history; and
- acted unconscionably.

The Ryan Parties allege the following evidence supports their allegations:

- A Robert Half International employee told Ryan Construction Services that Robert Half International screens its applicants and runs background checks on them. The firm's representative made these statements before placing Eubanks with Ryan Construction Services on a temporary basis.
- A magazine article discussing Robert Half International states that the firm screens candidates/potential employees and runs background checks on them.

---

[2] Because we conclude the Ryan Parties have not successfully attacked Robert Half International's summary-judgment ground that it did not have a legal duty to conduct a background check, we need not determine whether Robert Half International had a negligence duty to conduct a criminal background check.

- Robert Half International gave Ryan a form signed by Eubanks authorizing Robert Half International to run a criminal background check.

- The Ryan Parties converted Eubanks to a permanent employee. Robert Half International runs criminal background checks on all parties converted to permanent employees.

In its motion for no-evidence summary judgment, Robert Half International asserted that there is no evidence Robert Half International represented that it had conducted a criminal background check, no evidence that it had a duty to disclose it had not conducted a criminal background check, no evidence that Robert Half International misrepresented the characteristics or benefits of its polices, no evidence that Robert Half International had a duty to conduct a criminal background check or disclose a criminal background check, and no evidence that Robert Half International acted in an unconscionable manner.

*Alleged Misrepresentation that Robert Half International Conducted a Criminal Background Check*

Section 17.46(b)(5) of the DTPA prohibits a person from making a representation that goods or services have characteristics that they do not have. Tex. Bus. & Com. Code Ann. § 17.46(b)(5) (West, Westlaw through 2017 R.S .). Robert Half International moved for summary judgment on the ground that there is no evidence the firm represented that it had performed a criminal background check and no evidence that the firm represented that its services had benefits they did not have.

Robert Half International attached to its motion the Ryan Parties' responses to discovery in which the Ryan Parties identified the factual basis of their claims as stemming from statements a Robert Half International employee made indicating that Robert Half International performed "background checks." Robert Half International attached a document outlining the "General Conditions of

11

Assignment." In the section entitled "Scope of Background Check," the document explains the way Robert Half International conducts reference checks and states that Robert Half International does not conduct a criminal background check. Barbie Brown was one of the employees of Ryan Construction Services who worked with Ryan in contracting for Eubanks's placement for accounting services. On behalf of Ryan Construction Services, both Ryan and Brown signed time sheets containing a clause in which they acknowledged and accepted the "General Conditions of Assignment and Terms of Payment."

According to the Ryan Parties, "'background check' in the modern lexicon, means a check into one's criminal history." The Ryan Parties attached to their summary-judgment motion a definition of the term "background check" that includes looking into criminal history. On appeal, they argue there is no other meaningful background check. The Ryan Parties contend that the "General Conditions of Assignment" is ambiguous because although the document states that Robert Half International does not conduct criminal background checks, the firm actually does conduct a criminal background check before converting an employee from a temporary position to a permanent position.

The statement the Robert Half International employee made was not false, misleading, or deceptive. Robert Half International ran a background check on Eubanks by asking selected questions from her references about her work experience. The background check Robert Half International ran before placing Eubanks with the Ryan Parties met the description of the scope of the background check listed in the "General Conditions of Assignment." The Robert Half International employee did not state that Robert Half International would run a criminal background check, so the employee did not make a misrepresentation about any contract or service benefit or about the characteristics of Robert Half

12

International's services.  *See Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 395 (Tex. App.—Dallas 2012, no pet.).  Furthermore, Robert Half International sent the "General Conditions of Assignment," a document explaining exactly what it had done and explaining that it had not run a criminal background check.  *See id.*  Even if as a general proposition the term "background check" could include checking criminal history, Robert Half International set forth precisely what it meant by the term in the "General Conditions of Assignment." *See Duke v. Caterpillar, Inc.*, No. 2005 WL 568071, at \*4–\*5 (Tex. App.—Houston [14th Dist.] Mar. 10, 2005, no pet.) (mem. op.).  Ryan Construction Services acknowledged and accepted those conditions and, in doing so, agreed to this meaning of "background check."

The parties dispute whether Robert Half International provided Ryan with a background-check authorization form, but assuming Robert Half International gave it to Ryan, the form in and of itself was not a statement that Robert Half International had run a criminal background check.  Robert Half International's practice of running criminal background checks for its own purposes before converting a placed  employee from temporary to permanent status does not make the "General Conditions of Assignment" ambiguous.  The "General Conditions of Assignment" explains that there are legal limitations on sharing the results of criminal background checks.  At the point in time Robert Half International placed Eubanks, it had not run a criminal background check.  The Ryan Parties do not state that any evidence shows Robert Half International made any representations at the time the Ryan Parties converted Eubanks to a permanent employee.

The Ryan Parties did not submit any evidence raising a genuine fact issue that Robert Half International made a misrepresentation.  *See id.*  Accordingly, the trial court did not err in granting summary judgment as to the Ryan Parties' claims

13

that Robert Half International violated the DTPA by misrepresenting that it would conduct a criminal background check or by representing that the service included a criminal background check when it did not.

*Failure to Disclose Placed Employee's Criminal History*

We next examine whether the trial court erred in granting Robert Half International's no-evidence summary-judgment motion on the Ryan Parties' claim under the DTPA that Robert Half International failed to disclose Eubanks's criminal history and that by this failure to disclose, Robert Half International intended to induce the Ryan Parties to enter into a transaction they would not have entered had the information been disclosed. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (West, Westlaw through 2017 R.S.).

To prevail on a failure-to-disclose claim under section 17.46(b)(24) of the DTPA, the Ryan Parties must show the following elements: (1) a failure to disclose material information concerning goods or services that was (2) known at the time of the transaction, (3) and intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed. *See Red Roof Inns, Inc. v. Jolly*, No. 14-10-00344-CV, 2011 WL 6288147, at *7 (Tex. App.—Houston [14th Dist.] Dec. 15, 2011, no pet.) (mem. op.).

Even construing the Ryan Parties' brief liberally, we conclude they have not attacked the trial court's granting of summary judgment on their claim under the DTPA that Robert Half International failed to disclose Eubanks's criminal history and that by this failure to disclose, Robert Half International intended to induce the Ryan Parties to enter into a transaction they would not have entered had the information been disclosed. The Ryan Parties have waived this point by failing to provide adequate briefing. *See* Tex. R. App. P. 38.1; *San Saba Energy, L.P.*, 171 S.W.3d at 337.

14

*Acting Unconscionably*

The Ryan Parties assert that Robert Half International acted unconscionably under section 17.50(a)(3) of the DTPA because the employee-placement firm failed to inform the Ryan Parties that the criminal background check went back only seven years. Robert Half International asserted that there is no evidence it acted unconscionably.

A consumer may recover actual damages for any unconscionable action or course of action that is a producing cause of economic damages or damages for mental anguish. Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (West, Westlaw through 2017 R.S.). An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). To prove an unconscionable action, a consumer must show that the defendant's acts took advantage of the lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001).

The Ryan Parties did not include anything in their appellate briefing other than the bald assertion that Robert Half International's actions were unconscionable. The Ryan Parties did not allege they lacked knowledge or address whether Robert Half International took advantage of their lack of knowledge. Nor did the Ryan Parties undertake to explain that the alleged resulting unfairness was glaringly noticeable, flagrant, complete, or unmitigated. The Ryan Parties did not cite any relevant cases. Nor did they cite the legal standard or explain how Robert Half International's actions met that standard. To the extent the Ryan Parties seek to raise a separate argument attacking the summary judgment as to the claims under section 17.50(a)(3), the Ryan Parties waived this argument by failing to brief

15

it in accordance with the rules.  *See* Tex. R. App. P. 38.1; *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## C. Challenges to the Trial Court's Evidentiary Rulings

In their fourth issue the Ryan Parties assert that the trial court erred in excluding exhibits from the summary-judgment proof. We considered the exhibits in determining the propriety of the summary judgment.  So, even if the trial court erred in excluding these exhibits, the trial court did not err in granting summary judgment. Thus, we deem any error in excluding the exhibits harmless.  *See Santos v. I Lone Star Auto Parties, Ltd.*, No. 14-11-00067-CV, 2011 WL 6157031, at * 2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.).  We overrule the Ryan Parties' fourth issue.

## CONCLUSION

Because the trial court did not err in granting Robert Half International's summary-judgment motion as to the negligence claim or the DPTA claims, we overrule the Ryan Parties' first three issues. Even presuming the trial court erred in excluding the summary-judgment evidence made the subject of the fourth issue, the error is harmless and so affords no basis for appellate relief.  Having rejected all of the Ryan Parties' appellate challenges, we affirm the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Donovan and Wise.