

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00320-CV

_____

KEITH D. AIKENS, Appellant

V.

CHARLENE K. DUELING, Appellee

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-316423-20

---

Concurring and Dissenting Memorandum Opinion by Justice Walker

**CONURRING AND DISSENTING MEMORANDUM OPINION**

I concur in the majority's holding affirming summary judgment on Keith's negligence and gross negligence claims, albeit for different reasons. I respectfully dissent, however, to the majority's holding affirming summary judgment on Keith's premises liability claim.

## I. KEITH WAIVED HIS NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS

In his appellate brief, Keith argues that Charlene owed him a duty only under a premises liability theory. Specifically, he argues that Charlene had a duty to protect him, as her invitee, from the foreseeable criminal actions of Mr. Pettway. He presents no argument that Charlene owed him a duty under a general negligence theory.

*Timberwalk* makes it clear that negligence and premises liability claims are independent of one another and impose different duties upon the defendant. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). It makes equally clear that a "complaint that a landowner failed to provide adequate security against criminal conduct is ordinarily a premises liability claim." *Id.*

Because Keith presents no argument on appeal that Charlene had a duty under a general negligence theory, he has waived by inadequate briefing any complaint that the trial court erred in granting summary judgment on his negligence cause of action. *See* Tex. R. App. P. 38.1; *Ryan Constr. Servs., LLC v. Robert Half Int'l, Inc.*, 541 S.W.3d 294, 300–01 (Tex. App.—Houston [14th Dist.] 2017, no pet.). This would invariably dispose of his gross negligence claim, which he similarly failed to brief on appeal. *See*

Tex. R. App. P. 38.1; *Douglas v. Hardy*, 600 S.W.3d 358, 372 (Tex. App.—Tyler 2019, no pet.). Accordingly, I concur in affirming the trial court's judgment as to Keith's negligence and gross negligence claims, though on different grounds than those relied upon by the majority.

## II. MORE THAN A SCINTILLA OF EVIDENCE SUPPORTED KEITH'S PREMISES LIABILITY CLAIM

In her motions for summary judgment, Charlene challenged Keith's evidence as to each element of his premises liability claim except for the existence of his damages. Accordingly, because Keith was Charlene's invitee and because Keith claims that he was harmed by Mr. Pettway's criminal conduct that occurred on Charlene's premises, to survive summary judgment there needed to be more than a scintilla of evidence that (1) Charlene had a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm to Keith on her premises, (2) she breached that duty, and (3) the breach proximately caused Keith's damages. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *Timberwalk*, 972 S.W.2d at 756. To prove that Charlene had such a duty, the evidence needed to show that Charlene knew or should have known of an unreasonable and foreseeable risk of harm to Keith—namely, that Mr. Pettway was a danger to him. *See Del Lago*, 307 S.W.3d at 767.

Because I believe the summary judgment evidence showed more than a scintilla of evidence on each of these elements, I would reverse the trial court's judgment as to Keith's premises liability claim and remand for further proceedings on that claim only.

## 1. THE *TIMBERWALK* FACTORS ARE INAPPLICABLE

The majority affirms the trial court's judgment on Keith's premises liability claim, holding under *Timberwalk* that Keith failed to present foreseeability evidence "of any recent criminal activities on or near Charlene's premises similar to the incident in question." *See Timberwalk*, 972 S.W.2d at 756. Additionally, under *Del Lago*, the majority holds that Keith failed to present foreseeability evidence that Charlene had "direct knowledge of an imminent confrontation between Mr. Pettway and Keith." *See Del Lago*, 307 S.W.3d at 769. However, as established in *Del Lago*, the *Timberwalk* foreseeability factors are not applicable to the facts of our case. *See id.* at 768. We should instead base our holding on the multiple factors presented in *Del Lago*, which the majority fails to appropriately consider through the narrow lens of summary judgment rules that require us to view all evidence favorably to Keith and to resolve any doubts against Charlene. *See id.* at 768–69; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

As the majority points out and Keith acknowledges, a premises owner generally has no duty to protect its invitees from the criminal conduct of a third party. *See Del Lago*, 307 S.W.3d at 767. However, an exception to this general rule exists whereby a premises owner might be liable for third-party criminal conduct that injures an invitee if the owner "knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Timberwalk*, 972 S.W.2d at 756.

4

In *Timberwalk*, the Texas Supreme Court sought to determine under what circumstances an apartment-complex owner could be held liable for the sexual assault of a tenant. *Id.* at 759. The court announced that in such cases foreseeability required a showing of previous crimes on or near the premises and that courts must consider five factors—proximity, recency, frequency, similarity, and publicity—to determine whether the criminal conduct in question was foreseeable. *Id.* at 757–59.

In *Del Lago*, the court returned to the question of when a premises owner could be held liable for third-party criminal conduct that injures an invitee. *Del Lago*, 307 S.W.3d at 767. This time, the court sought to determine whether a bar owner could be held liable for the injuries of a customer when the relevant fight broke out after ninety minutes of escalating tension between two groups at the bar. *Id.* at 765–67. In analyzing whether the bar owner had a duty there, the court held that the *Timberwalk* factors were inapplicable because the bar owner, unlike the apartment complex owner, had direct knowledge that criminal conduct was imminent. *Id.* at 768. The court then stated that "the *Timberwalk* factors are not the only reasons that a criminal act might be deemed foreseeable." *Id.*

Drawing from the Restatement of Torts and prior caselaw, the court outlined additional factors that may be considered to determine the foreseeability of criminal conduct when the *Timberwalk* factors are inapplicable; these include (1) the nature and character of the premises, (2) immediately preceding conduct, (3) location, (4) mode of doing business, and (5) an owner's observation or past experience. *Id.* at 768–69.

5

It held that the bar owner had a duty to protect its injured invitee–customer because the owner

> had actual and direct knowledge that a violent brawl was imminent between drunk, belligerent patrons and had ample time and means to defuse the situation. [The owner's] duty arose not because of prior similar criminal conduct but because it was aware of an unreasonable risk of harm at the bar that very night. When a landowner "has *actual* or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent" to reduce or eliminate that risk. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).

*Id.* at 769.

Because Charlene is more akin to the bar owner than she is to the apartment complex owner due to her foreknowledge of Mr. Pettway's violent propensities and hatred of Keith, I would hold that the *Timberwalk* factors are inapplicable to our case. Instead, we should analyze the foreseeability of Mr. Pettway's criminal conduct under *Del Lago's* guidance. And the section of the Restatement of Torts quoted by the *Del Lago* court is also instructive to our discussion and provides another factor to consider:

> Moreover, the actor may have sufficient knowledge of the immediate circumstances *or the general character of the third party* to foresee that party's misconduct. For example, if the owner of a gun who leaves it on a table at home knows that a houseguest has a long record of violent crimes, that knowledge supports the claim that the owner is negligent in giving the guest access to the gun.

Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (Am. L. Inst. 2010) (emphasis added).

6

## 2. MORE THAN A SCINTILLA OF EVIDENCE EXISTED THAT CHARLENE HAD A DUTY TO PROTECT KEITH

Viewing the evidence against the *Del Lago* factors and in the light most favorable to Keith, an issue of fact exists as to whether Charlene knew or should have known that Mr. Pettway posed a foreseeable and unreasonable risk of assaultive injury to Keith. *See Timberwalk*, 972 S.W.2d at 756 ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."). Relevant to our case are the following factors: the nature and character of the premises, immediately preceding conduct, the owner's observations or past experience, and the general character of the third party. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (Am. L. Inst. 2010).

### A. The Nature and Character of the Premises

Here, the nature and character of the premises—Charlene's house—is important. It is a home that Charlene and Keith previously shared as romantic partners. After they broke up, Keith continued to live there in another bedroom just down the hall even after Charlene started dating Mr. Pettway. It is foreseeable that Mr. Pettway—or any new boyfriend—would not be content with such an arrangement and that it would be a source of turmoil in the relationship between the two men. This is particularly true given the fact that Charlene knew that Mr. Pettway was vehemently opposed to Keith living in her house.

**B. Immediately Preceding Conduct; Observations and Past Experiences; General Character of Mr. Pettway**

In the month leading up to the assault, the following occurred:

- Charlene told Keith that Mr. Pettway carried a taser "like a pistol in a holster on his hip at all times."

- Charlene and Mr. Pettway argued multiple times about Mr. Pettway being upset that Keith lived in her home.

- Charlene told Keith of Mr. Pettway's displeasure at the living arrangements and that Mr. Pettway hated him.

- In what Charlene described as a "big fight," Charlene and Keith argued about Keith needing to move out; Keith told Charlene that she would have to evict him.

- Charlene told Mr. Pettway about her argument with Keith and that she was "fighting" for their relationship by trying to get Keith to leave her house.

- Mr. Pettway told Charlene via text that Keith was "going to force me to hurt him real bad," then Mr. Pettway informed her that he had been arrested twice for assault. Charlene responded that she knew he was a bad boy; to which Mr. Pettway stated that he could be "a mean motherfucker."

- Charlene observed Mr. Pettway exhibit "anger or aggression" regarding Keith after Keith made what Mr. Pettway perceived as an unreasonable offer to purchase Charlene's totaled motorcycle.

In the week leading up to the assault, the following occurred:

- Charlene told Keith that Mr. Pettway wanted Keith to leave the house immediately and that he would be visiting the house that weekend. She added that the situation had "escalated way faster than [she] thought." She instructed Keith to go rent a storage unit and that "maybe" she would be able to calm Mr. Pettway down. Keith interpreted this to mean that Mr. Pettway was coming to "hurt" Keith, even though Charlene maintained this was not the case.

8

- Charlene picked up Mr. Pettway that weekend and brought him to her house.

While this conduct was not as immediate to the assault in question as found in *Del Lago*, in my estimation it is not so remote as to be irrelevant to our foreseeability calculus here. Further, this evidence shows that Charlene had observed and experienced Mr. Pettway's anger toward Keith and that she knew of his potentially violent character. Thus, when viewed in Keith's favor and making all of the attendant inferences on summary judgment, I would conclude that there existed an issue of fact as to whether Mr. Pettway's conduct was foreseeable to Charlene.

## C. The Risk Was Unreasonable

I would also hold that this evidence raised a fact issue as to whether the risk posed by Mr. Pettway was unreasonable. The unreasonableness of a risk is closely tied to foreseeability and "turns on the risk and likelihood of injury to the plaintiff . . . as well as the magnitude and consequences of placing a duty on the defendant." *Del Lago*, 307 S.W.3d at 770.

Here, the risk to Keith was substantial in that Mr. Pettway had been arrested at least twice for assault, threatened to physically harm Keith, and carried a taser with him at all times. And requiring Charlene, under these circumstances, to take steps to protect Keith from this risk would not impose upon her any great burden.

Accordingly, I would hold that a fact issue exists as to whether Charlene had a duty to protect Keith under these circumstances.

### 3. MORE THAN A SCINTILLA OF EVIDENCE EXISTED THAT CHARLENE BREACHED HER DUTY AND THAT HER BREACH PROXIMATELY CAUSED KEITH'S INJURY

Likewise, this evidence raises a fact issue as to whether Charlene took steps to reduce or eliminate the risk posed by Mr. Pettway to Keith. While it is true that she generally told Keith that Mr. Pettway hated him and wanted him off the premises, she never warned Keith of Mr. Pettway's violent past or direct threats to do Keith harm. Instead, without warning Keith of these facts, Charlene brought Mr. Pettway to her house.

This evidence also raises a fact issue as to whether or not Charlene's breach proximately caused Keith's injuries. It is reasonable to infer that, had Keith known of the violent risk posed by Mr. Pettway, he would not have come to the house at all knowing that Mr. Pettway was also there. Had Keith not come to the house that weekend, the assault would not have taken place.

### III. CONCLUSION

For these reasons, I concur in the judgment on Keith's negligence and gross negligence claims, but I respectfully dissent as to the majority's holding on Keith's premises liability claim and would reverse the trial court's judgment and remand on that claim only.

/s/ Brian Walker
Brian Walker
Justice

Delivered: August 25, 2022

10